STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GARY C. WRIGHT, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 23, 1985—Decided April 4, 1986.

Before Judges FRITZ, BRODY and GAYNOR.

*Mario Apuzzo,* attorney for appellant.

*Alan A. Rockoff,* Prosecutor of Middlesex County, attorney for respondent (*Richard J. Biunno,* Assistant Middlesex County Prosecutor, on the letter brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Defendant was charged with operating a motor vehicle while under the influence of liquor (*N.J.S.A.* 39:4–50) and refusing to give a sample of his breath "for the purpose of making chemical tests to determine the content of alcohol in his blood" (*N.J. S.A.* 39:4–50.2; *N.J.S.A.* 39:4–50.4a). The municipal court judge was not convinced beyond a reasonable doubt that defendant operated the vehicle. Four witnesses testified that he was a passenger. The judge was satisfied, however, that the arresting officer had probable cause to believe that defendant had been the operator of the vehicle. Defendant was therefore acquitted in the municipal court of operating while intoxicated, but convicted of refusing to submit to the breathalyzer test.

The sole issue presented to the Law Division Judge was a legal one: when a defendant is charged with refusing to submit to a breathalyzer test, must the State prove beyond a reasonable doubt that he was operating a motor vehicle at the time he was allegedly intoxicated? The judge answered the question negatively, found defendant guilty, suspended his operator's license for six months and imposed a $250 fine. We recently

answered the question affirmatively and now reverse the conviction. *State v. Gately*, 204 *N.J.Super.* 332 (App.Div.1985).

A person may lawfully refuse to give a police officer a breath sample unless that person had previously consented to the procedure and the "police officer ... has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4–50." *N.J.S.A.* 39:4–50.-2(a). A person is deemed to have given his consent by operating a motor vehicle on a New Jersey street. *Ibid.* Thus the operator of a motor vehicle may lawfully refuse an officer's request when the officer has no reasonable grounds for charging him with being intoxicated. A person not operating a motor vehicle, who therefore has not given previous consent to surrender his breath, may also lawfully refuse an officer's request even though the officer has reasonable grounds for charging him with operating while intoxicated.

The wording of *N.J.S.A.* 39:4–50.4a can cause some confusion because it appears to contain all the elements of the offense. Those elements include "whether the arresting officer had probable cause to believe that the [defendant] had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State...." That section also provides, however, that the offense consists of refusal "to submit to the chemical test provided for in [*N.J.S.A.* 39:4–50.2]."

*N.J.S.A.* 39:4–50.2 implicitly prohibits taking breath samples of a person without his consent. It further provides, however, that "[a]ny person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood...." It further provides that only after such consent has been given may "a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4–50" request that person to give a sample of his

breath. Thus in order to convict a person for refusing to give a sample of his breath, the State must prove that he had given prior consent under *N.J.S.A.* 39:4–50.2, in addition to proving the elements of the offense as provided in *N.J.S.A.* 39:4–50.4a.

We agree with the court in *Gately* that *N.J.S.A.* 39:4–50.2 deems consent to have been given by the act of operating the motor vehicle at the time of the alleged intoxicated driving. "Any person who operates a motor vehicle ... shall be deemed to have given his consent ..." can have no other reasonable meaning. Our dissenting colleague states that these words refer to "those who have in fact been driving." Presumably that would include anyone who has ever operated a motor vehicle at some time in his life. Surely the Legislature did not intend that a person who once operated a motor vehicle 25 years ago thereby consented to giving a New Jersey police officer a sample of his breath a quarter of a century later. Nor should the words be limited to mean persons licensed by New Jersey or some other jurisdiction to operate a motor vehicle. There is no reason to immunize unlicensed operators from the imposition of a fine.

Finally, it makes sense to predicate a conviction for refusing to submit to a breathalyzer test on a preliminary finding that the defendant was in fact operating a motor vehicle while allegedly under the influence. The function and purpose of the refusal offense is to punish an operator who attempts to defeat a prosecution for operating while under the influence by withholding evidence of intoxication. Probable cause to believe that an operator was under the influence is therefore all that should be needed to convict for refusal. The refusal, however, does not deprive the police of evidence of operation. There is therefore less reason to convict for refusal in a case where regardless of the refusal the State would have been unable to prove operation, an essential element of operating while under the influence.

As to the case posited in the dissent, the police may request both intoxicated suspects who had been in the vehicle to give

samples of their breath. Our colleague's proposal to coerce them to comply by threatening to convict both if they refuse may supply evidence of intoxication. It will not, however, supply the missing evidence of who had been operating the vehicle. At most, the dissenter's interpretation of the statute might coerce the guilty suspect to confess in order to save the innocent suspect from an unjust conviction. We do not believe that the Legislature intended the statute to serve that purpose.

Reversed.

FRITZ, P.J.A.D. (dissenting).

It is with considerable trepidation that I begin this effort, since I swim against the tide, not only of two judges on my Part but also of three on another. *State v. Gately,* 204 *N.J.Super.* 332 (App.Div.1985). Add to that the seductive persuasion of *Gately* and of the majority here and a dissenter begins to doubt his own serious convictions. Were my convictions less strong than they are, I would have succumbed long before this.

But I am satisfied that the majority has tripped over a stumbling block so small as to be unnoticed yet sufficiently cataclysmic to defeat the purpose of the Legislature and its intent in the enactment of the statute. That intent is the polestar of our search in any statutory construction problem. The observation of the late Justice Hall in *Clifton v. Zweir,* 36 *N.J.* 309 (1962) teaches in another context:

> Judicial resolution of such matters must be guided by only one principle: legislative intent. The recent language of this court in *State v. Provenzano,* 34 *N.J.* 318, 322 (1961), although describing the construction of a single statute, is pertinent here: "The goal of the interpretative process is the intent of the Legislature * * * All rules of construction are subordinate to that obvious proposition." ... [A] court's realistic approach should be ... to try "to make sense out of the legislation, so far as text and context may allow." *Llewellyn, The Common Law and Tradition: Deciding Appeals 529 (1960).* [At 322–323.]

Permit me to note at the very outset a fundamental difference of opinion in the views which the majority and I hold (and for which respective positions neither of us has apparently

found any on-all-fours authority). The majority opines, "*N.J.S.A.* 39:4–50.2 implicitly prohibits taking breath samples of a person without his consent." I simply do not read this into that section of the statute. The purpose of that section as it appears to me is stated below and nothing about that gives me any reason to believe that the additional purpose of prohibiting the taking of breath samples without consent is implicit.

To me the scheme of the two statutes to which the majority adverts, *N.J.S.A.* 39:4–50.2 and *N.J.S.A.* 39:4–50.4a, and concerning the latter of which the majority recognizes that "[t]he wording ... can cause some confusion," is apparent. Section 50.2 was designed to provide a conclusive presumption that all who drive have consented including even those who might be incapable of giving consent at the time of apprehension. The section is complete. It describes the mechanics of the testing and protection for the examiner. Notably this section refers to "[a]ny person who operates a motor vehicle" about whom a police officer "has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4–50."

On the other hand, section 50.4a speaks of "any operator," but then goes on to define that phrase not in terms of "all who drive" or simply who "has been operating" but rather in the unambiguous and precise terms of "whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle ... while under the influence of intoxicating liquor [etc.]."

I am satisfied the difference is more than a slip of the Legislative lip. The consent statute, section 50.2, has driving as a predicate because it is only drivers who impliedly give consent. But it is complete respecting the offense of driving in fact and refusing to submit to a breathalyzer test. Nothing more is needed for those who have in fact been driving. It is less than complete, however, respecting the person who may or may not have been driving but on the other hand is reasonably

suspected of having been driving while intoxicated and who refuses the test. This deficiency in section 50.2, read in the light of the majority opinion, invites interesting speculation in respect to a situation in which an automobile's two intoxicated occupants are standing outside the car when the policeman reaches it, and each denies operating the vehicle. No doubt, as the majority suggests, the police have a right to "request" both to give breath samples. And the majority would permit both (one of whom is certainly in fact the driver) simply to say "no." Is it conceivable, in this situation in which there is nothing to choose between the two as to who is in fact the driver, that the Legislature intended neither could be required to take a breath-alyzer test or risk license suspension because one of the two obviously was not in fact the driver?

Section 50.4a fills in the gap. It offers all concerned an opportunity to cooperate in matters of extremely critical timing. In fact, it mandates this cooperation in any case in which the police officer had reason to believe the person had been driving or was in actual physical control of the vehicle. It seems clear to me, for instance, that one sitting in the right hand seat who was in a position to inflict his or her will upon the driver would be subject to this section even if it were conceded from the outset that he or she was not driving the motor vehicle. I am satisfied, as apparently the *Gately* court was not, that section 50.4 can be offended apart from section 50.2 considerations.

The words of the statute convince me of the soundness of this analysis. More than this, however, the purpose of section 50.4a—which I thought perfectly obvious until I came across my respectful disagreement with the majority in this regard—seems to me to demand this approach. With respect to anyone driving in fact in New Jersey consent is implied by section 50.2 and refusal to take the test calls forth all the consequences of section 50.4 in any event. The purpose of section 50.4 must, then, extend beyond this. Therein lies the focus of my respectful disagreement with the majority and the small stumbling block which I believe flaws their determination.

They opine that "[t]he function and purpose of the refusal offense is to punish an operator who attempts to defeat a prosecution for operating while under the influence by withholding evidence of intoxication." I think that is too limited a view, since that can be done under section 50.2. I believe the true purpose of section 50.4 is to enable the enforcing authorities to reach out during the very short window in time during which the scientific evidence of intoxication is available, in order to examine a class whose proximity to the event indicates that the members of that class may have a contribution to make to the search for the truth. The Legislature defines this class as those who might reasonably be thought to have been driving the vehicle (whether they were in fact or not) or controlling it if they were not driving. Obviously the Legislature recognized that in a matter of hours—sometimes minutes—this evidence, if not preserved *de bene esse*, will be lost forever.

Nor do I share the concern expressed in *Gately* respecting a question of constitutionality. 204 *N.J.Super.* at 336. I am convinced, as I believe was the Legislature, that the brief intrusion upon private rights thus occasioned is a small enough price to pay for preservation of this critical evidence in the public interest, should it develop that the individual tested was in fact the driver. "The permissibility of a particular law enforcement practice is judged by 'balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' *United States v. Villamonte-Marquez*, 462 US 579, [586], 77 L Ed 2d 22, 103 S Ct 2573 (1983); *Delaware v. Prouse*, 440 US 648, 654, 59 L Ed 2d 660, 99 S Ct 1391 (1979); *Camara v. Municipal Court*, 387 US 523, 18 L Ed 2d 930, 87 S Ct 1727 (1967)." *United States v. Montoya De Hernandez*, —— *U.S.* ——, ——, 105 *S.Ct.* 3304, 3308, 87 *L.Ed.*2d 381, 388 (1985). The practice is uniquely appropriate to the situation which inheres in the transient state of intoxication. *See State v. Dyal*, 97 *N.J.* 229, 239 (1984). *Cf. Schmerber v. California*, 384 *U.S.* 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). If the individual tested is not proved

ultimately to be the driver, there is no residual harm at all, no matter what the state of intoxication at the time of the test.

If my convictions concerning the Legislative purpose are sound, it is that purpose which must control our interpretation irrespective of what the words themselves say. As is pointed out in *N.J. Builders, Owners and Managers Association v. Blair*, 60 *N.J.* 330 (1972):

> In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law. [At 338.]

Or as put by Justice Heher in *San-Lan Builders, Inc. v. Baxendale*, 28 *N.J.* 148, 155 (1958), "Reason is the soul of law."

As to which of the disparate views between those of the majority and mine "makes sense," as the majority puts it, beauty is, as it always has been, in the eye of the beholder. That which truly "makes sense" depends, I believe, on the purpose sought to be achieved. I prefer to think that the Legislature believed the preservation of extremely volatile evidence to be a goal superior to the redundancy provided by the rule espoused by the majority.

For these reasons, I would affirm.