STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. GARY C. WRIGHT, DEFENDANT-RESPONDENT.

Argued March 2, 1987—Decided June 30, 1987.

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for appellant (*Alan A. Rockoff,* Middlesex County Prosecutor, attorney).

*Ralph V. Furino, Jr.,* argued the cause for respondent (*Baer and Arbeiter,* attorneys).

*Boris Moczula,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey, (*W. Cary Edwards,* Attorney General, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

The issue in this case is whether a defendant may be convicted under *N.J.S.A.* 39:4–50.4a for refusing to submit to a breathalyzer test without proof that he actually was operating a motor vehicle at the time of his arrest. We hold that proof of actual operation is not required. To secure a conviction under *N.J.S.A.* 39:4–50.4a, the State must prove only that (1) the arresting officer had probable cause to believe that defendant had been operating a vehicle while under the influence of alcohol; (2) defendant was arrested for driving while intoxicated; and (3) defendant refused to submit to a breathalyzer test.

I

At approximately 12:52 a.m. on October 15, 1983, Patrolman Banach of the Monroe Township Police Department was sent to investigate a car parked on Spotswood-Englishtown Road. The car was parked in the right lane of the southbound side of the highway with the passenger-side tires touching the line separating the lane from the shoulder. Officer Banach found defendant, Gary Wright, sitting alone in the car. He was sitting in the driver's seat (the car had bucket seats), with the headlights on and the motor running.

Officer Banach asked to see defendant's driving credentials. Before producing the desired documents, defendant said, "I just stopped to let my girlfriend out to go to the bathroom." He indicated that she had gone into the woods. Officer Banach became suspicious that defendant might be intoxicated. The officer testified that defendant smelled of alcohol and that his speech was slurred. The officer asked defendant to step out of

the car. At this point, defendant admitted that he had consumed "a couple of beers."

Officer Banach asked defendant to perform various balancing tests. Defendant swayed when he stood with his feet together and his eyes closed. Defendant was able to touch his finger to his nose only once in thirteen attempts. He was unable to walk upright in a heel-to-toe fashion. In addition, defendant was unable to recite the alphabet correctly although the officer gave him two opportunities. At that point, Officer Banach concluded that defendant was intoxicated and placed him under arrest.

Soon thereafter, a woman, identified as defendant's girlfriend, Doris Patterson, approached the car from the nearby woods. She told the officer that she was the owner of the car and had been driving. But, because of defendant's earlier statements and his position behind the wheel, Officer Banach believed that defendant had been operating the car. Officer Banach took defendant to police headquarters, advised him of his rights, and asked him to submit to a breathalyzer test. He refused.

Defendant was charged with operating a motor vehicle while under the influence of alcohol, in violation of *N.J.S.A.* 39:4–50, and refusing to submit to a breathalyzer test, in violation of *N.J.S.A.* 39:4–50.4a. The matter was tried in municipal court. Four witnesses testified that defendant was merely a passenger in the car, not the operator. The court acquitted defendant of driving while intoxicated because it was unable to conclude beyond a reasonable doubt that defendant had been the driver of the car.[1] However, the court convicted

---

[1]The municipal court seems to have misconstrued the proper inquiry under *N.J.S.A.* 39:4–50.4a when it concluded that there was insufficient evidence to conclude that defendant had been the "driver" of the car. The proper inquiry is whether defendant was the "operator" of the vehicle. "Operator" is defined as "a person who is in actual physical control of a vehicle," *N.J.S.A.* 39:1–1. One can be an "operator" without driving. *See, e.g., State v. Mulcahy,* 107 *N.J.* 467 (1987) (defendant was an "operator" because he put key in ignition and had

defendant of refusing to submit to a breathalyzer test because it concluded that Officer Banach had probable cause to believe that defendant was the driver of the car.[2] The court fined defendant $250, plus court fees. It also suspended defendant's driver's license for two years, although the length of the suspension was later reduced to six months.

Defendant appealed to the Law Division, which held a trial *de novo* on the transcripts. Defendant argued that only a person who actually operates a vehicle can be convicted for refusing to take a breathalyzer test because New Jersey law implies consent to such a test only to a "person who operates a motor vehicle on any public road, street or highway." *N.J.S.A.* 39:4-50.2(a) (the consent statute).[3] The Law Division held that proof of actual operation is not necessary for a conviction under *N.J.S.A.* 39:4-50.4a (the refusal statute) because actual operation is not one of the requirements set forth in the statute.[4]

---

intent to drive car). Although we do not decide so today, we note that evidence that defendant was sitting in the driver's seat with the headlights on and the motor running seems to be sufficient to establish that he was the "operator" of the car.

[2]Based upon defendant's statements and his position in the car with the headlights on and the motor running, we agree with the court's determination that the officer had probable cause to believe defendant had operated the car.

[3]*N.J.S.A.* 39:4-50.2(a) provides:

Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4-50.

[4]*N.J.S.A.* 39:4-50.4a provides:

. . . . . . .

The municipal court shall determine by a preponderance of the evidence whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on

The Appellate Division reversed defendant's conviction. 209 *N.J.Super.* 482 (1986). The court held that the consent statute and the refusal statute must be read together. The court began with the premise that "[a] person may lawfully refuse to give a police officer a breath sample unless that person had previously consented to the procedure...." *Id.* at 484. Since *N.J.S.A.* 39:4–50.2(a) implies consent only to persons operating a motor vehicle, the court concluded that "[a] person not operating a motor vehicle, who therefore has not given previous consent to surrender his breath, may ... lawfully refuse an officer's request even though the officer has reasonable grounds for charging him with operating while intoxicated." 209 *N.J.Super.* at 484. Stated differently, "in order to convict a person for refusing to give a sample of his breath, the State must prove that he had given prior consent under *N.J.S.A.* 39:4–50.2(a) in addition to proving the elements of the offense as provided in *N.J.S.A.* 39:4–50.4a." *Id.* at 485. Since the municipal court found insufficient evidence to conclude beyond a reasonable doubt that defendant actually operated the car, the Appellate Division reversed the conviction.

Judge Fritz dissented. He rejected the majority's conclusion that both statutes must be read together. He first noted his fundamental disagreement with the majority's conclusion that the consent statute, by implication, prohibits the taking of breath samples without consent. Judge Fritz opined that *N.J. S.A.* 39:4–50.2(a) was designed to provide a conclusive presumption that all who drive have consented including even those who might be incapable of giving consent at the time of apprehension. *Id.* at 487. Judge Fritz concluded that *N.J.S.A.* 39:4–50.4a is self-contained and designed to encourage coopera-

---

the public highways or quasi-public areas of this State while under the influence of intoxicating liquor or a narcotic, hallucinogenic, or habit-producing drug or marihuana, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer, and if these elements of the violation are not established, no conviction shall issue.

tion with police before evidence is lost forever. *Id.* at 489. He argued that reading the two statutes together, as the majority did, makes the refusal statute redundant because an operator who refuses to submit to the test could already be punished under the consent statute. *Id.* Therefore, Judge Fritz would have affirmed the conviction provided the officer had probable cause to believe that the defendant operated the vehicle, regardless of whether defendant actually operated the car. *Id.* at 490.

By virtue of Judge Fritz's dissent, the state was entitled to an appeal as of right. *R.* 2:2–1(a)(2). We granted the Attorney General leave to appear as *amicus curiae.*

## II

The language and legislative history of *N.J.S.A.* 39:4–50.2 and *N.J.S.A.* 39:4–50.4a, as well as the fundamental policies underlying our drunk driving laws, lead us to conclude that the Legislature did not intend to require proof of actual operation of a motor vehicle for a conviction under the refusal statute.

In construing a statute we first consider its plain language. Our reading of *N.J.S.A.* 39:4–50.2 and *N.J.S.A.* 39:4–50.4a confirms that each statute is self-contained. As stated by Fritz, P.J.A.D., 209 *N.J.Super.* at 487–88:

> Section 50.2 was designed to provide a conclusive presumption that all who drive have consented including even those who might be incapable of giving consent at the time of apprehension. The section is complete. It describes the mechanics of the testing and protection for the examiner. Notably this section refers to "[a]ny person who operates a motor vehicle" about whom a police officer "has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4–50."
>
> On the other hand, section 50.4a speaks of "any operator," but then goes on to define that phrase not in terms of "all who drive" or simply who "has been operating" but rather in the unambiguous and precise terms of "whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle ... while under the influence of intoxicating liquor [etc.]."
>
> I am satisfied the difference is more than a slip of the Legislative lip. The consent statute, section 50.2, has driving as a predicate because it is only drivers who impliedly give consent. But it is complete respecting the offense of

driving in fact and refusing to submit to a breathalyzer test. Nothing more is needed for those who have in fact been driving. It is less than complete, however, respecting the person who may or may not have been driving but on the other hand is reasonably suspected of having been driving while intoxicated and who refuses the test.

\* \* \* \* \* \* \* \*

Section 50.4a fills in the gap. It offers all concerned an opportunity to cooperate in matters of extremely critical timing. In fact, it mandates this cooperation in any case in which the police officer had reason to believe the person had been driving or was in actual physical control of the vehicle. It seems clear to me, for instance, that one sitting in the right hand seat who was in a position to inflict his or her will upon the driver would be subject to this section even if it were conceded from the outset that he or she was not driving the motor vehicle. I am satisfied, as apparently the *Gately* court was not, that section 50.4 can be offended apart from section 50.2 considerations.

\* \* \* \* \* \* \* \*

With respect to anyone driving in fact in New Jersey consent is implied by section 50.2 and refusal to take the test calls forth all the consequences of section 50.4 in any event. The purpose of section 50.4 must, then, extend beyond this.

Furthermore, it is clear that *N.J.S.A.* 39:4–50.4a does not expressly condition conviction for a refusal upon a finding of actual operation of a motor vehicle. Instead, the statute expressly sets forth the following three requirements necessary for a conviction:

The municipal court shall determine by a preponderance of the evidence whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while under the influence of intoxicating liquor or a narcotic, hallucinogenic, or habit-producing drug or marihuana, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer, and if *these elements of the violation* are not established, no conviction shall issue. [ (emphasis added).]

Absent evidence to the contrary, we are reluctant to presume that the Legislature intended something other than it expressed in its plain language. *See In re Jamesburg High School Closing,* 83 *N.J.* 540, 548 (1980). Nonetheless, we recognize that the refusal statute, on its face, may cause some confusion, as evidenced by conflicting decisions in the Appellate Division. In *State v. Grant,* 196 *N.J.Super.* 470 (1984), the Appellate

Division upheld the refusal conviction of a defendant who had been acquitted of driving while intoxicated because of the State's failure to prove he had operated or intended to operate the car. The court stated: "As is readily apparent from the statutory language, actual operation of a vehicle while intoxicated is not an element of the [refusal] offense. Rather, the necessary statutory predicate is probable cause to believe that an offense has been committed." *Id.* at 475. One year later, the Appellate Division reached the opposite conclusion in *State v. Gately,* 204 *N.J.Super.* 332 (1985), and reasoned, as did the majority of the Appellate Division in this case, that because *N.J.S.A.* 39:4–50.2(a) requires actual operation in order to imply consent, actual operation must be established before a conviction for refusal can stand. Hence, it reversed the refusal conviction of a defendant who had been acquitted on drunk driving charges because the state had not proved actual operation. It distinguished *Grant* because of that Court's failure to discuss consent.

The language in *N.J.S.A.* 39:4–50.4a appears to be contradictory. The first sentence of the statute provides that "[t]he municipal court shall revoke the right to operate a motor vehicle of any *operator*...." [5] (emphasis added). This language could be interpreted as limiting the application of the statute to those actually operating a motor vehicle. However, the statute specifically provides, as an element of the violation, that "the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle." This language suggests that probable cause to believe defendant operated a vehicle, not actual operation, is an element of the offense. Thus arguably there are two possible alternate interpretations of the statute.

---

[5]Arguably this is because only operators have given implicit consent to take a breathalyzer test.

In such circumstances, the primary factor in construing a statute is the intent of the Legislature. *AMN, Inc. of New Jersey v. South Brunswick Township Rent Leveling Bd.*, 93 *N.J.* 518, 525 (1983); *State v. Madden*, 61 *N.J.* 377, 389 (1972); *Wollen v. Borough of Fort Lee*, 27 *N.J.* 408, 418 (1958). In discerning the legislature's intent, we must consider not only the particular statute in question, but also the entire legislative scheme of which it is part. *Denbo v. Moorestown Township*, 23 *N.J.* 476, 481 (1957); *State v. Brown*, 22 *N.J.* 405, 415 (1956).

"The primary purpose behind New Jersey's drunk driving statutes is to curb the senseless havoc and destruction caused by intoxicated drivers." *State v. Tischio*, 107 *N.J.* 504, 512 (1987). *Accord State v. Dyal*, 97 *N.J.* 229, 237 (1984). We have consistently given a broad interpretation to the drunk driving laws when a narrow interpretation would frustrate this legislative policy. *See, e.g., State v. Tischio, supra*, 107 *N.J.* 504 (blood alcohol level at time of test establishes the offense; extrapolation evidence estimating blood alcohol level at time of arrest not admissible because Legislature wanted to eliminate the need for expert testimony relating to existence and degree of intoxication); *State v. Mulcahy, supra*, 107 *N.J.* 467 (defendant who was about to turn on ignition of car and had intent to drive it was an operator for the purposes of *N.J.S.A.* 39:4–50.-4a).

Our review of the Act's legislative history convinces us that the Legislature did not intend to condition a conviction for refusal on actual operation of a motor vehicle. *N.J.S.A.* 39:4–50.4a originally provided: "A person who operates a motor vehicle while under the influence of intoxicating liquor ... shall be subject [to penalties]." It soon became apparent, however, that "under the influence of intoxicating liquor" was a standard that created substantial enforcement difficulties. As we commented in *State v. Johnson*, 42 *N.J.* 146, 167 (1964),

[w]hat was needed to properly and fairly protect against the drinking driver was a test which could be easily and promptly administered by law enforcement officials and would, with sufficient accuracy, establish the amount of alcohol in

the subject's system and a measurement criterion which would scientifically establish "under the influence" for purposes of the motor vehicle operation statute.

The Legislature addressed this problem in 1951 by enacting *N.J.S.A.* 39:4–50.1, which provided that in any prosecution for drunk driving, a .15% blood alcohol level would give rise to a presumption that defendant was intoxicated.[6]

A problem with this legislation was that drivers were not required to take a blood-alcohol test and refusal to take such a test carried no penalties. Consequently, many motorists refused to submit to such tests. During the public hearings on the Implied Consent Bill, Robert Donigan, Chief Counsel, Northwestern University Traffic Institute, testified:

As the use of chemical test evidence has become more prevalent throughout the country, it has been found that an increasing number of motorists suspected of or charged with driving while under the influence are refusing to submit to such tests, thus effectively depriving the courts and juries of this highly probative type of evidence. [*Public Hearings on Senate Bill No. 8 [Driving While Impaired]* and *Senate Bill No. 9 [Implied Consent]*, February 21, 1966, at 12 (hereinafter *Hearings I*).]

Mr. Donigan testified that refusal rates in the municipalities around the country were as high as ninety-two percent. *Hearings I, supra,* at 12. David B. Kelly, Superintendent of the New Jersey State Police testified that during the fiscal year 1964–65, 136 (or 26.5%) of 514 suspected drunk drivers refused to take a drunkometer test when asked to do so by State Police. *Public Hearings on Senate Bill No. 8 [Driving While Impaired] and Senate Bill No. 9 [Implied Consent],* February 28, 1986, at 14.

The high rate of refusals made enforcement of the drunk driving laws difficult. Without a breathalyzer test, police were denied a method of reliably distinguishing those motorists who were drunk from motorists who displayed symptoms of drunkeness that were actually attributable to other causes. For example, an accident victim might have been dizzy and disori-

---

[6]Since then the Legislature has made a .10% blood-alcohol level a *per se* offense. *See N.J.S.A.* 39:4–50(a).

ented because of any injury, not drunkeness. Conversely, a motorist who was dizzy and disoriented because of drunkeness might claim that he had suffered an injury. Inability to easily identify drunk motorists necessitated a great number of trials. Brendan Byrne, then President of the County Prosecutors Association of New Jersey, testified that "winning those cases represents the consumption of a great amount of time. There are fewer pleas in drunken driving cases. A good many of them go to trial and a good many of them are taken up on appeal and are retried in the county courts." *Hearings I, supra,* at 43.

New Jersey's response to these problems was patterned after the "implied consent" laws that had been enacted in several states, most notably New York. In the early 1950's some people in the United States advocated laws compelling every motorist suspected of drunk driving to submit to a chemical test. Others suggested that every driver should be required to sign an agreement, as part of his application for a drivers license, to submit to a chemical test if and whenever he should be suspected of drunk driving. Many in the traffic safety field expressed doubt that such drastic solutions would be acceptable to the public. As Mr. Donigan testified, "[t]hey ventured the opinion that there are far too many people in this country who are not yet ready to accept the fact that the hazards created by the drinking driver are so aggravated as to warrant the type of legislative action in compulsory tests." *Hearings I, supra,* at 14. As a compromise, New York enacted an implied consent statute. Several other states followed.

New Jersey enacted a consent statute patterned on these examples. The purpose of this statute was to encourage motorists suspected of drunk driving to take a breathalyzer test. *Report of the New Jersey Motor Vehicle Study Commission,* 136 (September 1975); *see also State v. Heides,* 128 *N.J.Super.* 589, 605 (Bergen Cty. Ct. 1974) ("The implied consent statute was conceived and enacted for laudable public purposes and to serve valid state interests, including the avoidance of force in

obtaining samples...."). The statute was necessary because police require a suspect's cooperation in order to obtain a breath sample. *State v. Macutz,* 57 *N.J.* 1, 13 (1970) ("the provision was ... made necessary because affirmative cooperation is required of the person being examined to 'blow up the balloon,' whereas this is not so in the case of a test by use of a blood sample.")

This statute was supplemented by *N.J.S.A.* 39:4–50.4, which imposed penalties for those refusing to submit to a breathalyzer test. Upon receiving a report that a defendant refused to submit to a test, the Director was authorized to suspend defendant's license. Defendants were given ten days to request a hearing. The statute provided:

> Upon such request, the director shall hold a hearing on the issues of whether the arresting officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while under the influence of intoxicating liquor, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer.

This statute provided added encouragement for people to comply with requests to take breathalyzer tests. *Bean v. Strelecki,* 101 *N.J.Super.* 310, 313 (App.Div.1968) (the implied consent law "was promulgated to aid our courts and law enforcement agencies in the development of objective scientific evidence of intoxication. *N.J.S.A.* 39:4–50.4 was enacted to further this purpose by inducing a motorist suspected of driving while under the influence of alcohol to submit to objective analysis of his intoxication level.").[7]

Even after these provisions were enacted, about twenty-five percent of those arrested for driving under the influence re-

---

[7] In addition, it was suggested at the hearings that this section would be an added deterrent to drunk driving. *See* testimony of Brendan Byrne, then President of the County Prosecutors Association of New Jersey, *Hearings I, supra,* at 45 ("I do believe that if people driving in this State knew that when driving under the influence of intoxicating liquor they were under an obligation to consent to this type of test or to face the consequences of a refusal to consent, that fact in and of itself would represent and act as a deterrent.")

fused to take a test. *Report of the New Jersey Motor Vehicle Study Commission, supra,* at 147. One of the reasons for this was that the six month penalty for refusal was less than the penalty many defendants would have received upon a conviction for drunken driving. As explained by the Study Commission:

> If an individual is a second offender under the impaired statute, it is advantageous for him to refuse the test, since the penalty he must receive, if convicted, is two years loss of license. If he is charged with driving while under the influence, he faces either a two or ten year revocation, depending on his prior record. By refusing the test, he deprives the state of objective evidence of intoxication or impairment (and perhaps evidence of his own innocence), and risks a six month loss of license.
>
> . . . . . .
>
> It is presently advantageous for an individual to refuse the breath test since the refusal suspension penalty is so much shorter than any penalty imposed under *N.J.S.A.* 39:4-50 except for a first "impaired" offense. That advantage should be removed from the law so that more individuals will be induced to take the test. [*Id.* at 147-48, 150-51].

The Legislature responded by enacting *N.J.S.A.* 39:4-50.4a to provide for a six month license suspension for a first offense and a two year license suspension for a second offense. The statute also provided that a court shall impose a fine of not less than $250 nor more than $500 for each offense.

The statements accompanying A-2293, the bill which made these amendments, clearly indicate the understanding of the Legislature and then Governor Byrne that actual operation of a vehicle is not a requirement of conviction under the refusal statute. *See* Assembly Statement to A-2293 ("Under present law, a law enforcement officer may require an individual to take a breathalyzer to determine the content of alcohol in his system if he has reasonable grounds to believe the person is driving in violation of R.S. 39:4-50"); Senate Judiciary Committee Statement to A-2293 ("Under present law, a law enforcement officer may require an individual to take a breathalyzer test to determine the content of alcohol in his system if he has reasonable grounds to believe that the person is driving under the influence."); Report of the Governor to the Assembly re: Assembly Bill No. 2293 (January 4, 1982) (hereinafter Gover-

nor's Report) ("The Bill ... provides that the Court must conclude beyond a reasonable doubt that the arresting officer had reasonable grounds to believe that the person was driving under the influence of alcohol or drugs and refused to submit to a breathalyzer test before a conviction. may issue.").

The legislative history of the consent and refusal statutes clearly indicates that the Legislature enacted these statutes to facilitate drunk driving investigations. They were designed "to enable the enforcing authorities to reach out during the very short window in time during which the scientific evidence of intoxication is available, in order to examine a class whose proximity to the event indicates that the members of that class may have a contribution to make to the search for the truth." 209 *N.J.Super.* at 487 (Fritz, P.J.A.D., dissenting). A requirement of actual operation is not consistent with these overriding objectives. Moreover, in amending the refusal statute in 1981, the Legislature clearly expressed its view that actual operation is not required for a refusal conviction.

Furthermore, as appropriately noted by Judge Fritz in his dissenting opinion, the merging of the provisions of *N.J.S.A.* 39:4–50.2 and *N.J.S.A.* 39:4–50.4a creates a redundancy:

> The consent statute, section 50.2, has driving as a predicate because it is only drivers who impliedly give consent. But it is complete respecting the offense of driving in fact and refusing to submit to a breathalyzer test. Nothing more is needed for those who have in fact been driving. It is less than complete, however, respecting the person who may or may not have been driving but on the other hand is reasonably suspected of having been driving while intoxicated and who refuses the test.... Section 50.4a fills in the gap. [209 *N.J.Super.*, *supra,* at 487–88 (Fritz, P.J.A.D., dissenting).]

The nature of the subject matter, the contextual setting, and statutes in *pari materia* must all be viewed together in seeking the legislative intent. *Loboda v. Clark Township,* 40 *N.J.* 424, 435 (1963). *Febbi v. Division of Employment Sec.,* 35 *N.J.* 601, 606 (1961); *State v. Brown, supra,* 22 *N.J.* at 415. Since the Legislature is presumed to be fully conversant with its legislation, *Brewer v. Porch,* 53 *N.J.* 167, 174 (1969), courts are to avoid constructions that make statutory provisions redundant or meaningless. *Paper Mill Playhouse v. Millburn Township,*

95 *N.J.* 503, 521 (1984); *Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 68 (1978). "With respect to anyone driving in fact in New Jersey, consent is implied by section 50.2 and refusal to take the test calls forth all the consequences of section 50.4 in any event. The purpose of section 50.4 must, then, extend beyond this." 209 *N.J.Super.* at 488 (Fritz, P.J. A.D., dissenting).

We note also that if actual operation is deemed necessary for a refusal conviction, the nature of a refusal hearing will be distorted. A breathalyzer refusal hearing has always been treated as a civil matter; the standard of proof in such a proceeding is a preponderance of evidence. *N.J.S.A.* 39:4-50.-4a.[8] The *Wright* majority, however, has elevated this by requiring "actual operation," which must be proved beyond a reasonable doubt, a standard that is traditionally associated with criminal and quasi-criminal case. *See State v. Grant, supra,* 196 *N.J.Super.* at 481 (recognizing the anomaly of requiring the State to prove a second drunk driving conviction beyond a reasonable doubt in the context of a refusal hearing, where the "preponderance of the evidence" standard was applicable). Such a result will have the unwelcome effect of increasing the complexity of the refusal hearing. *See State v. Tischio, supra,* 107 *N.J.* at 527 (the Legislature has sought "to stream-

---

[8]As originally introduced, the bill would have provided that a conviction for refusing to submit to Breathalyzer testing could not issue unless all of the elements of the offense were proven beyond a reasonable doubt. Assembly Bill No. 2293. However, Governor Byrne returned the bill to the Assembly for its reconsideration, with certain objections. Among them was an objection to the standard of proof required for a conviction. The Governor noted:

I believe that the beyond a reasonable doubt standard of proof is an unusually harsh burden of proof in a non-criminal case and will encourage more people to refuse to submit to a breathalyzer test. Thus, I recommend that the preponderance of the evidence standard currently utilized in the administrative hearing of this type of case be retained. [Governor's Report, *supra.*]

The Assembly adopted the Governor's recommendation and, as finally passed, *N.J.S.A.* 39:4-50.4a provides for a preponderance of the evidence standard of proof for a breathalyzer refusal conviction. *L.* 1981, c. 512, § 2.

line the administration of the penal and regulatory laws in this area").

### III

The purpose of the refusal statute is to encourage all suspected drunk drivers to take the breathalyzer test. It is designed as a separate and distinct offense from conviction of drunk driving. Yet, under the Appellate Division's interpretation of the statute, the substantive offense of driving while under the influence is inextricably intertwined with the refusal offense. Thus, under the Appellate Division's interpretation, whenever a defendant is acquitted of driving while under the influence because the State has failed to prove that he was the actual operator of the motor vehicle, he likewise will be acquitted under the refusal statute, even though the police officer had "probable cause to believe that the person had been driving or was in actual physical control of the motor vehicle." *N.J. S.A.* 39:4-50.4a. We find that such a result thwarts the Legislature's will.

Accordingly, the judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.