NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3764-14T2

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

    v.

MICHAEL RICHARD POWERS,

        Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 14, 2016**
>
> **APPELLATE DIVISION**

Argued September 20, 2016 — Decided December 14, 2016

Before Judges Fisher, Ostrer and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Municipal Appeal No. 49-2014.

Michael Richard Powers, appellant, argued the cause pro se.

Jason M. Boudwin, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; Mr. Boudwin, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Defendant was convicted after a trial in municipal court, and again upon his appeal to the Law Division, of obstruction, which occurs when, as pertinent here, a person "purposely

obstructs, impairs or prevents . . . a public servant from lawfully performing an official function by means of . . . physical interference . . . or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a). The State claimed that by way of "physical interference" and by means of an "independently unlawful act" defendant obstructed a state trooper in the issuance of a summons for a parking violation at a New Jersey Turnpike rest stop. We conclude that defendant could not be convicted of obstruction by means of "an independently unlawful act" but remand for further findings as to what the judge believed constituted "physical interference."

In considering defendant's argument about the sufficiency of the evidence,[1] we start by recognizing that, on an appeal of a municipal conviction, a Law Division judge is "to determine the case completely anew on the record made in the municipal court, giving due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the

---

[1] Defendant's attack on the sufficiency of the evidence is posed over the course of two points of his brief. Defendant argues in his other points that: (1) the municipal judge failed to arraign him as required by Rule 7:6-1; (2) the municipal judge erred in denying his motion for a judgment of acquittal; (3) the State "did not disprove [his] affirmative defense beyond a reasonable doubt"; (4) the State failed to provide discovery; and (5) the municipal judge improperly reinstated the charges when he had previously dismissed them. Because of our disposition of the appeal, we need not reach these other points.

witnesses." State v. Johnson, 42 N.J. 146, 157 (1964). Our review of the factual record is also limited to determining whether there is sufficient credible evidence in the record to support the Law Division judge's findings. Id. at 161-62; State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005). Accordingly, we defer to those findings made in the Law Division that are supported by credible evidence, but we owe no deference to the legal conclusions drawn from those findings. State v. Handy, 206 N.J. 39, 45 (2011).

By way of a written opinion, the Law Division judge found that, on November 6, 2013, at a Woodbridge rest stop on the New Jersey Turnpike, defendant and another motorist had parked their vehicles in a no-parking area. A state trooper came upon these two unoccupied vehicles and provided a dispatcher with their license plates to ascertain whether the vehicles were stolen or abandoned. As this occurred, defendant exited the building and approached. The trooper asked for defendant's license and explained he was citing defendant's vehicle because it was parked in a no-parking area.

The trooper instructed defendant to enter his vehicle; the trooper testified this instruction was based on his concern for defendant's safety due to the amount of traffic at the rest stop. Defendant did not comply. In addition, as the Law Division

judge observed, "defendant's hands repeatedly [went] in and out of his pockets," causing the trooper to instruct defendant not to do that. When defendant did not comply, the trooper grabbed defendant's wrist and again instructed him to keep his hands out of his pockets. With that, defendant responded, "Why did you grab me? Why did you assault me?"; he removed a cellphone from his vehicle and dialed 9-1-1, reporting he had just been assaulted by an officer. Upon observing defendant recite his patrol car numbers during this phone call, the trooper called for backup.

The trooper again instructed defendant to get in his vehicle. Defendant again refused; he told the trooper he was an attorney, knew his rights, and was waiting for "direction from someone on the phone." When another trooper arrived, defendant was arrested.

In interpreting the significance of these events, the Law Division judge described the issue as whether defendant, "in failing to comply with the trooper's orders to keep his hands out of his pockets and sit in his vehicle for the duration of the motor vehicle stop," obstructed the officer.

As noted earlier, N.J.S.A. 2C:29-1(a) declares that a person commits the offense of obstruction "if he purposely obstructs, impairs . . . or attempts to prevent a public servant

from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." The Law Division judge concluded that defendant impaired the trooper's performance by both "physical interference" and "by means of an[] independently unlawful act," ibid., but it is far from clear whether he drew those different conclusions from the same facts, as suggested in his opinion by these comments:

> Although [d]efendant acted without violence, his conduct (i.e., standing outside of his car and repeatedly putting his hands in his pockets) directly opposed [the] [t]roop-er['s] instructions and physically inter-fered with the officer's ability to perform his official duties of issuing the summons while protecting his own safety and the safety of others.
>
> . . . .
>
> Notwithstanding the [c]ourt's finding that [d]efendant in this case did in fact physically interfere[] with the officer's ability to carry out his duties, the [c]ourt also finds, supra, that even absent such physical interference, [d]efendant is still guilty of obstruction on the independent basis that [d]efendant committed an unlawful act.

In short, the judge may have relied on the same facts — that defendant stood outside his vehicle and repeatedly put his hands in and took his hands out of his pockets contrary to the trooper's directions — to conclude that defendant impeded the

trooper by both physically interfering and by engaging in an independently unlawful act.

Nonetheless, it is unclear exactly how the judge believed defendant's failure to obey the trooper's commands physically interfered with his ability to write or issue a parking ticket. Nor is it clear whether the judge believed defendant engaged in additional, unspecified conduct that physically interfered with the trooper, such as standing in his path or physically distracting him. What constitutes obstruction may often turn on the precise details of the charged conduct. Absent clearer findings, we cannot determine where on the existing continuum of similar cases[2] this matter might be found.

Because of this lack of clarity and the absence of specific findings to support the judge's conclusion that defendant

---

[2] In State v. Rone, 410 N.J. Super. 589, 596-97 (App. Div. 2009), the evidence was sufficient to support an obstruction conviction where the defendant arrived at the police stop, parked her vehicle between the stopped vehicle and the police vehicle, and later briefly stood between the two vehicles. And, in State v. Perlstein, 206 N.J. Super. 246, 253 (App. Div. 1985), an obstruction conviction was affirmed where, during a motor vehicle stop, the defendant attempted to move her car contrary to an officer's directions. On the other hand, in State v. Camillo, 382 N.J. Super. 113, 118 (App. Div. 2005), we held that the defendant's refusal to provide requested information "may, in fact, have in a real sense obstructed the trooper from preparing his report" but that, "in the absence of physical interference," he could not be found to have violated N.J.S.A. 2C:29-1(a).

physically interfered with the trooper, we remand for further findings.

The Law Division judge, however, was clear about the conduct he believed constituted an "independently unlawful act." The judge found that defendant's actions were "independently unlawful" by force of N.J.S.A. 39:4-57, which provides that "[d]rivers of vehicles . . . shall at all times comply with any direction, by voice or hand, of a member of a police department" when the officer is in the course of "enforcing a provision of this chapter." As part of his analysis of this statute, the Law Division judge determined the trooper was enforcing "a provision of this chapter" when issuing a summons because the vehicle was parked in violation of N.J.A.C. 19:9-1.6. We disagree with the judge's application of this statute.

First, N.J.S.A. 39:4-57 has no application because defendant was not at the time a "driver[] of [a] vehicle[]." He was not inside the vehicle and, in fact, the State insists obstruction occurred in part because defendant refused to enter his vehicle at the trooper's direction; that contention logically defies what it means to be a driver of a vehicle whether we apply existing case law[3] or the law of physics.[4]

_____

[3] The Legislature's definition of "driver" is not helpful in resolving the issue presented. N.J.S.A. 39:1-1 (defining
(continued)

Second, the trooper was not in the process of enforcing what N.J.S.A. 39:4-57 refers to as "a provision of this chapter." The statute refers only to Chapter 39. Because the trooper was not citing defendant for a moving violation or any provision of Chapter 39, and instead was only in the process of writing a ticket because defendant parked in a prohibited area,

---

(continued)
"[d]river" as "the rider or driver of a horse, bicycle or motorcycle or the driver or operator of a motor vehicle, unless otherwise specified" in Chapter 39). Questions regarding the nature of a defendant's relationship to a vehicle frequently arise when the defendant is charged with "operat[ing] a motor vehicle" while under the influence, N.J.S.A. 39:4-50(a). But "operation" suggests a broader scope of conduct than "driving." See State v. Wright, 107 N.J. 488, 491 n.1 (1987) (relying on the definition of "operator" in N.J.S.A. 39:1-1, as "a person who is in actual physical control of a vehicle"). In Wright, the Court found "evidence that defendant was sitting in the driver's seat with the headlights on and the motor running seems to be sufficient to establish that he was the 'operator' of the car." 107 N.J. at 491 n.1. In referring to another case decided the same day, State v. Mulcahy, 107 N.J. 467 (1987), the Court held a defendant was operating a vehicle because he "put [the] key in [the] ignition [with the] intent to drive [the] car." 107 N.J. at 491 n.1 (emphasis added). Wright and Mulcahy, in short, recognize that "driving" a car involves the guiding of the vehicle while in motion, whereas "operating" involves some physical control over the vehicle with an "intent to drive." Wright, supra, 107 N.J. at 491 n.1. Either way, until modern technology causes a revisiting of what it means to "operate" or "drive" a vehicle, our jurisprudence does not view a person in possession of car keys but not actually inside the vehicle as a "driver."

[4] Just as Schrödinger's cat cannot logically be observed as both dead and alive at the same time, defendant could not be both inside and outside his vehicle at the same time.

N.J.S.A. 39:4-57 cannot form a basis for the independently unlawful act found by the Law Division judge.

Although we agree with the judge that the obstruction statute was intended "to prohibit a broad range of behavior designed to impede or defeat the lawful operation of government," Camillo, supra, 382 N.J. Super. at 116-17 (quoting Final Rep. of the N.J. Criminal Law Revision Comm'n (1971), Vol. II, at 280), we cannot lose sight of the fact that we are construing the elements of a criminal offense. See State v. Churchdale Leasing, 115 N.J. 83, 102 (1989) (holding that courts are obligated to strictly construe ambiguous criminal and quasi-criminal statutes). We therefore reject the invitation to loosely interpret what it means to be a "driver[] of [a] vehicle[]" or what constitutes a violation of Chapter 39 in determining whether the facts found by the Law Division judge support a conviction for obstruction.

In concluding defendant was not obligated by N.J.S.A. 39:4-57 to comply with the trooper's commands that he remove his hands from his pockets or enter his own vehicle, we reject the argument that defendant engaged in an "independently unlawful act" as the basis for his obstruction conviction. And, as noted above, because the judge was unclear about the actions of

A-3764-14T2

defendant that he believed constituted "physical interference," we remand for further findings.

Remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION