173 N.J. Super. 431 (1980)
414 A.2d 584
IN THE MATTER OF VICTOR A. BERGWALL, JR., APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 1, 1980.
Decided April 25, 1980.
Before Judges LORA, ANTELL and PRESSLER.
Crummy, Del Deo, Doland & Purcell, attorneys for the appellant (Robert W. Delventhal on the brief).
*432 John J. Degnan, Attorney General of New Jersey, attorney for the respondent (Erminie L. Conley, Assistant Attorney General, of counsel; Robert M. Jaworski, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
Appellant Victor Bergwall appeals from the imposition by the Director of the Division of Motor Vehicles of a one-year suspension of his driving license upon the administrative adjudication of his refusal to submit to a breathalyzer test following his arrest for drunk driving. N.J.S.A. 39:4-50.2, 50.4. The legal question raised by this appeal is whether the effect of the 1977 amendment of N.J.S.A. 39:4-50.4 is to impose the enhanced penalty of a one-year license suspension only in the case of a second refusal or rather in the case of a first refusal following a previous drunk driving conviction.
On September 2, 1977 appellant was arrested for drunk driving. He was taken to the police station where he refused a request to submit to a breathalyzer test. Despite the consequent absence of test results, he was nevertheless ultimately convicted of drunk driving. He had been once previously convicted of driving while impaired but on that occasion had consented to taking the breathalyzer test. An administrative proceeding was initiated against appellant arising out of his September 1977 breathalyzer refusal and, on an adverse finding, the one-year suspension penalty was imposed. Appellant argues that if any penalty was proper it should have been a 90-day suspension.
N.J.S.A. 39:4-50.4(b), adopted in 1977, reads in full as follows:
Any revocation of the right to operate a motor vehicle over the highways of this State for refusing to submit to a chemical test shall be for 90 days unless the refusal was in connection with a subsequent offense of this section, in which case, the revocation period shall be for 1 year. In addition to any other *433 requirements provided by law, a person whose operator's license is revoked for refusing to submit to a chemical test must satisfy the requirements of a program of alcohol education or rehabilitation pursuant to the provisions of R.S. 39:4-50.
This section, adopted in 1977, replaced the former version of N.J.S.A. 39:4-50.4, which provided for a six-month license suspension on each occasion of an unjustifiable refusal.
The critical language of the present statute is, of course, the phrase "unless the refusal was in connection with a subsequent offense of this section, in which case, the revocation period shall be for 1 year." It is appellant's contention that "a subsequent offense of this section" is intended to refer only to a subsequent refusal and not to a subsequent drunk driving conviction. He, therefore, places constructional emphasis on the word "section." The Director of the Division of Motor Vehicles, on the other hand, has taken the position that the operative word is "offense," and the "offense" referred to is not a prior refusal but rather a prior conviction.
We agree with the appellant. We are persuaded by principles of statutory construction as well as considerations of public policy that the actual legislative intention was to impose the enhanced penalty only for subsequent refusals and that the phrase in question should be read not as "a subsequent offense of this section" but rather as if it were "a subsequent violation of this section."
We are first satisfied that the word "section" in the statutory phrase unmistakably means N.J.S.A. 39:4-50.4 itself. The word "section" is consistently used throughout N.J.S.A. 39:4-50.1 to 50.4 to refer to a separate and individually numbered and captioned portion of the overall legislative enactment dealing with chemical analysis to determine alcohol percentages in the blood. The word thus appears in N.J.S.A. 39:4-50.1 to refer to that section. It is used in N.J.S.A. 39:4-50.2(d) to refer to subparagraphs (b) and (c) of that section. It is used in N.J.S.A. *434 39:4-50.2(e) to refer to section 4 of the act, further identified as N.J.S.A. 39:4-50.4. There is no reason for us to assume that the use of the word in N.J.S.A. 39:4-50.4 has any other technical meaning than a reference to N.J.S.A. 39:4-50.4 itself.
N.J.S.A. 39:4-50.4 moreover does not deal with the offense of drunk driving. It deals rather with an entirely independent and separate subject, namely the circumstances pursuant to which a driver is required to submit to the chemical test and the consequences of his refusal to do so. There is, of course, no question but that the administrative procedure for adjudicating a violation of the obligation to submit is wholly independent of and separate from any quasi-criminal prosecution for the offense of drunk driving and that an unjustified refusal is subject to the penalty of the section whether or not there is indeed a drunk driving prosecution at all, and if there is, whether or not it results in a conviction. Thus, in the administrative proceeding provided for by N.J.S.A. 39:4-50.4 the question is not whether the driver was impaired by reason of intoxication but only whether he was required and refused to submit to the test. And the penalty provided by the section is not a penalty for driving while intoxicated but rather a penalty for wrongfully refusing to submit. See State v. Macuk, 57 N.J. 1 (1970); State v. Pandoli, 109 N.J. Super. 1 (App.Div. 1970); State v. Kenderski, 99 N.J. Super. 224 (App.Div. 1968).
We perceive no justification for creating an interdependent nexus between the refusal and the drunk driving conviction such as is implicit in the Director's interpretation. The statutory scheme has always been to preserve the independence of the two violations and, in our view, that independence is maintained by the 1977 amendment as well. Just as N.J.S.A. 39:4-50.4 presently imposes and previously imposed an enhanced penalty for subsequent convictions of drunk driving so, we are of the view, does N.J.S.A. 39:4-50.4 now impose an enhanced penalty for subsequent refusals. We point out, moreover, that the Director's *435 interpretation would result in anomalies which we do not believe were intended by the Legislature. If imposition of the enhanced penalty of N.J.S.A. 39:4-50.4 were invoked by reference to a previous conviction of drunk driving, then, for example, a driver who once refused the test but was on that occasion acquitted of drunk driving would not, since there were no prior drunk driving convictions, be subject to an enhanced penalty if on a second occasion he again refused to submit to the test. Such a result is, in our view, exactly contrary to what the Legislature intended. By the same token, a driver who consented to the test and was subsequently convicted of drunk driving, as appellant was here, would not on that occasion have violated N.J.S.A. 39:4-50.4 and hence would not be subject either to the administrative proceeding or to the administrative penalty provided thereby. If, on a second occasion, that driver were arrested for drunk driving and then refused to submit to the test, that would be his first violation of this section and the 90-day penalty should clearly apply. If he were subsequently convicted of drunk driving then, of course, he would also be subject to the enhanced penalty of N.J.S.A. 39:4-50. There is no reason to subject such a driver to the enhanced penalty for a subsequent breathalyzer test refusal as well when he had never previously refused. Any other result, in our view, would do violence to the policy and purpose of the statute, to common sense and to logic.
We are aware that in construing N.J.S.A. 39:4-50.4 as imposing the enhanced penalty for a first refusal by a driver who was previously convicted of drunk driving the Director was relying on a formal opinion of the Attorney General, F.O. 1977, No. 13. We are not, however, persuaded by its reasoning. The opinion relies on a table appearing in the Report of the New Jersey Motor Vehicle Study Commission (September 1975), 164. That table undertakes to compare various provisions of the pre-1977 law pertaining to drunk driving with the Commission's amendatory recommendations. Item number 8 of the table compares *436 consequences for refusal to submit to the chemical test, noting that while the then applicable penalty was a six-months' license suspension, the proposed penalty was "1st-6 mos. + Screen Ed. Subsq. to prior DWI Conv. in 15 yrs.-1 yr." On the understanding that DWI conviction means a conviction of driving while intoxicated, the Commission note may be suggestive of the Attorney General's construction. Nevertheless, the note itself is not without ambiguity; the Commission's recommended first refusal penalty was not accepted by the Legislature; and, in any case, the Commission's recommendations were in no way binding upon the Legislature. We, therefore, regard this nugget of legislative history as not sufficiently conclusive or substantial to overcome the considerations which compel us to the opposite result.
We have considered appellant's remaining challenges to the administrative proceeding and find them to be without merit.
The license suspension herein appealed from is modified from a period of one year to a period of 90 days, and as so modified, is affirmed.
LORA, P.J.A.D. (dissenting).
I respectfully dissent from the majority's holding that the Director of the Division of Motor Vehicles erred in imposing a one year suspension of appellant's driving privileges. Prior to the instant offense, appellant had been convicted of driving while impaired. On that occasion he had submitted to a breathalyzer test. Following his subsequent arrest for drunk driving and refusal to take a chemical breath test, the Director imposed a one-year suspension penalty.
Appellant asserts, and the majority agrees, that the phrase "subsequent offense of this section" as used in N.J.S.A. 39:4-50.4(b) should be read as if it were a "subsequent violation of this section" and interpreted to mean a subsequent refusal to submit to a test. They take the position that since appellant submitted *437 to the breathalyzer test when earlier apprehended and convicted of drinking-driving, his subsequent refusal to take the test does not constitute a "subsequent offense" so as to invoke the one year license suspension provision of the statute.
The statutory interpretation adopted by the majority places constructional emphasis on the word "section," holding as they do that the phrase, "in connection with a subsequent offense of this section," be given a meaning contrary to that which those words ordinarily imply since a refusal can not be "in connection with" another refusal. Rather, it can only be "in connection with" an arrest for drinking-driving and a request to take the breath test.
Only by construing N.J.S.A. 39:4-50.4(b) in a way not dictated by the legislative language can the majority's position be sustained. Such has not been the policy consistently followed by our courts. We have otherwise said, albeit in different contexts, that the courts will interpret and enforce the legislative will as written and not according to some supposed unexpressed intention. See Cobb v. Waddington, 154 N.J. Super. 11, 17 (App.Div. 1977); Petrangeli v. Barrett, 33 N.J. Super. 378, 385-386 (App. Div. 1954). Furthermore, full effect should be given to every word of a statute, Gabin v. Skyline Cabana Club, 54 N.J. 550, 555 (1969), with every word, sentence and clause, if possible, given full force and effect. Hoffman v. Hock, 8 N.J. 397, 406 (1952). The court's duty is to seek and find significance in legislative language. R.H. Macy & Co., Inc. v. Director, Div. of Taxation, 77 N.J. Super. 155, 168 (App.Div. 1962) aff'd 41 N.J. 3 (1963). It is my considered opinion that when the Legislature enacted paragraph (b) it intended a 90-day suspension for refusing to take the breath test and a one-year suspension when such refusal was subsequent to a prior (within 15 years) drinking-driving conviction.
Conceding that some ambiguity does exist, I am nevertheless convinced, after resorting to pertinent legislative history, that *438 the legislative purpose as revealed by the composite thrust of the whole statutory scheme was to impose a one-year suspension for refusing to take the breath test when subsequent to a prior (within 15 years) drinking/driving violation.
Most persuasive, and to my view controlling, is the Report of the New Jersey Motor Vehicle Study Commission (September 1975), 147-153, where, after discussing the "refusal statute" aspect of the drinking/driving statute, the Commission recommended that "penalties for refusing the breath test should be a six-month license suspension if no prior offense, or one-year suspension if a prior conviction within 15 years." Also significant is the legislative history which reveals that prior to enactment of the present amendment, the penalty for refusal had been a six-month license suspension, without provision for enhanced penalties for subsequent drinking-driving offenders. In reviewing the prior law and making its recommendations, the Motor Vehicle Study Commission noted that:
If an individual is a second offender under the impaired statute, it is advantageous for him to refuse the test, since the penalty he must receive, if convicted, is two years loss of license. If he is charged with driving while under the influence, he faces either a two or ten year revocation, depending on his prior record. By refusing the test, he deprives the state of objective evidence of intoxication or impairment (and perhaps evidence of his own innocence) and risks a six-month suspension .. .
It is presently advantageous for an individual to refuse the breath test since the refusal suspension penalty is so much shorter than any penalty imposed under N.J.S.A. 39:4-50 except for a first `impaired' offense. That advantage should be removed from the law so that more individuals will be induced to take the test. [Report of the Motor Vehicle Study Commission (September 1975) at 147-48, 150-151]
Further illustrative of the intended legislative purpose in enacting N.J.S.A. 39:4-50.4(b) is the "Statement to Senate, No. 1423," page 2, item 8 (May 24, 1976), prepared by the Senate Law, Public Safety and Defense Committee, which stated that the bill *439 accomplished a "number of changes in existing law regarding drinking and driving." It summarized those changes in existing law with respect to breath refusals as follows:

 Issue Current Statute Commission Recommendations
 ...
 8. Refusal 6 mos. DL suspension 1st  6 mos. + Alcohol
 Education, or Rehabilitation
 Subsq. to Prior DWI[1] Conv.
 in 15 yrs.  1 yr.[*]
 ...
 ...

The summary makes it apparent that a one-year suspension for refusing a breath chemical test was intended by the Legislature to be imposed in cases in which the refusal occurs within 15 years of an earlier unrelated conviction of driving while intoxicated. In the event there has been no earlier conviction of driving while intoxicated or the earlier conviction of driving while intoxicated has occurred more than 15 years prior to the refusal, a six-month suspension would be imposed. The recommended six-month suspension for refusing to submit to a breath test was reduced to 90 days in the final version of the bill. However, the legislative purpose to impose a one-year suspension for refusal in connection with a subsequent conviction of driving while intoxicated was not altered during the legislative process. Atty. Gen. F.O. 1977, No. 13. See, also, Senate Bill 1423 § 1 (1976); Report of the New Jersey Motor Vehicle Study Commission, supra at 153, 161, 164.
Accepting these extrinsic sources as interpretive of the contours of N.J.S.A. 39:4-50(b), it becomes apparent that the recommendations of the Commission as well as the proposed *440 changes outlined in the "Statement to Senate, No. 1423," compel a statutory interpretation which imposes a one-year license suspension for a refusal to submit to a breathalyzer test which was in connection with a subsequent drinking-driving offense.
Accordingly, I would affirm the determination by the Director of the Division of Motor Vehicles to suspend appellant's driving privileges for one year for refusing to take the breath chemical test.
NOTES
[1] The designation "DWI is used by the Committee as an abbreviation for driving while intoxicated."
[*] If more than 15 yrs. then treated as a first[.]