281 N.J. Super. 502 (1995)
658 A.2d 1281
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CLIFFORD J. TEKEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 1995.
Decided May 16, 1995.
*503 Before Judges MICHELS, KEEFE and HUMPHREYS.
Robbins and Robbins, attorneys for appellant (Mark S. Rothman, of counsel and on the letter brief).
W. Michael Murphy, Jr., Morris County Prosecutor, attorney for respondent (Joseph P. Connor, Jr., Assistant Morris County Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Clifford J. Tekel pleaded guilty in the Boonton Municipal Court for refusing to take a breathalyzer test in violation of N.J.S.A. 39:4-50.4a. Defendant had previously been convicted of driving while under the influence of intoxicating liquor in *504 violation of N.J.S.A. 39:4-50. The Municipal Court judge treated defendant's conviction for refusing to take a breathalyzer test as a subsequent offense within the meaning of N.J.S.A. 39:4-50.4a, suspended his driving privileges in New Jersey for two years, fined defendant $500, and ordered defendant to attend twelve to forty-eight hours at an Intoxicated Driver's Resource Center. Defendant appealed to the Law Division where, following a trial de novo on the record, he was again found guilty based on his guilty plea, and in addition to the penalties imposed by the Municipal Court judge, the Law Division judge also imposed a $50 Violent Crimes Compensation Board (VCCB) penalty and a $75 Safe Neighborhoods Services Fund (SNSF) assessment. Defendant appealed.
Defendant seeks a reversal of the two-year driver's license suspension, the $50 VCCB penalty and the $75 SNSF assessment, contending that the trial court erred in (1) holding that he was a second offender under N.J.S.A. 39:4-50.4a and (2) imposing a $50 VCCB penalty and a $75 SNSF assessment.
This appeal, once again, raises the interpretation and application of N.J.S.A. 39:4-50.4a. More precisely, the issue is whether a prior conviction for operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50 satisfies the language of "a subsequent offense under this section" contained in N.J.S.A. 39:4-50.4a, thereby mandating the imposition of the enhanced penalty of a two-year suspension. Defendant contends that only a conviction for a prior refusal to take a breathalyzer test in violation of N.J.S.A. 39:4-50.4a satisfies this statutory language and that a prior conviction for operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50 does not lead to the enhanced two-year penalty. We disagree and affirm the trial court's suspension of defendant's driver's license for two years.
Despite laws in place to prevent drunk driving, prior to the enactment of the original refusal statute, New Jersey drivers were not required to take blood-alcohol tests, and refusal to take such *505 tests carried no penalties. Consequently, many motorists refused to take the tests. State v. Wright, 107 N.J. 488, 498, 527 A.2d 379 (1987). This high rate of refusal made enforcement of the drunk driving laws very difficult. Without a breathalyzer test, police were without a method of reliably distinguishing motorists who were actually drunk from those motorists who displayed symptoms of drunkenness attributable to other causes, such as dizziness resulting from an injury. Id. at 498-99, 527 A.2d 379. This situation led to a great number of trials and a substantial waste of time and money. See Id. at 499, 527 A.2d 379.
The original refusal statute was enacted to combat these problems. It provided for a six-month license suspension for all refusals. N.J.S.A. 39:4-50.4. However, this deterrent proved ineffective because the six-month suspension period was less than the penalty many defendants would have received upon a conviction for drunk driving. Wright, supra, 107 N.J. at 501, 527 A.2d 379. In response, the Legislature amended the statute to include a one-year suspension of driving privileges for any motorist whose refusal was in connection with a subsequent violation. N.J.S.A. 39:4-50.4(b). Viewed by the Legislature as still insufficient, the statute was again amended in 1981. Such amendments have resulted in the current form of the refusal statute, N.J.S.A. 39:4-50.4a. This statute, in pertinent part, now reads as follows:
The municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S. 39:4-50, shall refuse to submit to the chemical test ... when requested to do so, for 6 months unless the refusal was in connection with a subsequent offense under this section, in which case the revocation period shall be for 2 years.
[Emphasis added.]
We construe the language "a subsequent offense under this section" contained in N.J.S.A. 39:4-50.4a to include the offense of operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. In reaching this conclusion, we reject defendant's interpretation of this language to mean that only a refusal to take a breathalyzer test can constitute a "subsequent offense under this section" of the statute.
*506 Our interpretation of this language is grounded in well-settled principles of statutory construction that "[w]here a literal rendering [of a statute] will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." N.J. Builders, Owners and Managers Association v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972). See also J.C. Chap. Prop. Owner's, etc., Assoc. v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969); Dvorkin v. Dover Tp., 29 N.J. 303, 315, 148 A.2d 793 (1959). In seeking to ascertain the purpose and reason for the legislation, a court must consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987). See also Wright, supra, 107 N.J. at 497, 527 A.2d 379; Denbo v. Moorestown Twp., 23 N.J. 476, 481, 129 A.2d 710 (1957); State v. Brown, 22 N.J. 405, 415, 126 A.2d 161 (1956).
Furthermore, it is beyond question that "[s]tatutes [should] not be interpreted in a manner leading to absurd or unreasonable results." 534 Hawthorne Ave. Corp. v. Barnes, 204 N.J. Super. 144, 148, 497 A.2d 1265 (App.Div. 1985). See also State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966). In fact, when construing a statute, "every effort should be exerted to avoid ... an anomalous result." Union Co. Bd. of Freeholders v. Union Co. Park Com., 41 N.J. 333, 341, 196 A.2d 781 (1964). See Robson v. Rodriquez, 26 N.J. 517, 528, 141 A.2d 1 (1958); New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957); Reisman v. Great Amer. Recreation, 266 N.J. Super. 87, 96, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993).
Additionally, in Wright, supra, 107 N.J. at 497, 527 A.2d 379, our Supreme Court emphasized that the primary factor in construing a statute, such as our drunk driving statutes, is the intent of the Legislature, and, that:
In discerning the legislature's intent, we must consider not only the particular statute in question, but also the entire legislative scheme of which it is part.

*507 `The primary purpose behind New Jersey's drunk driving statutes is to curb the senseless havoc and destruction caused by intoxicated drivers.' We have consistently given a broad interpretation to the drunk driving laws when a narrow interpretation would frustrate this legislative policy.
[Citations omitted.]
Analyzing the legislative intent underlying N.J.S.A. 39:4-50.4a in light of the statutory scheme dealing with drunk driving, it would be anomalous if we were to adopt the position of defendant. The Legislature could not have intended to more severely punish one who refuses to take a breathalyzer test than one who was convicted of drunk driving. It would be inequitable to suspend for a period of two years, the driving privileges of a motorist who has refused to submit to a breathalyzer test for a second time, while if that same motorist had not refused to submit to the test, but had instead originally been convicted of drunk driving, his license would only be suspended for a period of six months. It is clear that if our courts were to treat a convicted drunk driver less harshly than one who was convicted of refusing to submit to a breathalyzer test, it would violate the spirit of the statute and greatly frustrate our legislative policy.
The interpretation we place on the language "a subsequent offense under this section" is supported by and consistent with other decisions in this State. For example, in In re Bergwall, 85 N.J. 382, 427 A.2d 65 (1981), rev'g on dissent 173 N.J. Super. 431, 414 A.2d 584 (App.Div. 1980), the Supreme Court established that the enhanced penalty provided under N.J.S.A. 39:4-50.4(b) [the 1977 amendment that replaced N.J.S.A. 39:4-50.4 (L. 1977, c. 29, § 4) and was the precursor to the current statute, N.J.S.A. 39:4-50.4a] was applicable to motorists who refused a breathalyzer test after a conviction for driving while under the influence of intoxicating liquor. This holding was later supported by other decisions. See State v. Fahrer, 212 N.J. Super. 571, 578-79, 515 A.2d 1240 (App.Div. 1986); State v. Wilhalme, 206 N.J. Super. 359, 362-63, 502 A.2d 1159 (App.Div. 1985), certif. denied, 104 N.J. 398, 517 A.2d 401 (1986). Cf. State v. Grant, 196 N.J. Super. 470, 479-81, *508 483 A.2d 411 (App.Div. 1984) (affirming a similar enhanced penalty, without considering the precise issue raised on this appeal).
The Bergwall decision was rendered before the 1981 amendment to the statute in question, when the more lenient one-year suspension period was in effect. However, in Wilhalme, which was decided when the current refusal statute was in effect, we specifically held that the policies which supported Bergwall were sound, and that the amendment to the statute did not alter the prior interpretation that a prior conviction for driving while intoxicated triggered the imposition of the enhanced two-year license suspension penalty for refusal to take a breathalyzer test under N.J.S.A. 39:4-50.4a. Wilhalme, supra, 206 N.J. Super. at 360-61, 502 A.2d 1159. The Wilhalme court explained that:
An examination of the legislative history in chronological juxtaposition with the litigation history of Bergwall rebuts defendant's contention. In 1980 we held that the phrase "of this section" was limited to prior refusals to submit. In re Bergwall, 173 N.J. Super. 431, 433 [414 A.2d 584] (App.Div. 1980). In a dissent, Judge Lora expressed the view that the phrase encompassed the drunk driving section of Title 39, N.J.S.A. 39:4-50  that the legislative history clearly indicated a prior drunk driving conviction would trigger the greater penalty. Id. at 437-440 [414 A.2d 584]. After our opinion in Bergwall, the legislation was introduced which repealed N.J.S.A. 39:4-50.4 and enacted N.J.S.A. 39:4-50.4a. In its original version, the phrase "in this section" was replaced with "under R.S. 39:4-50", the meaning unsuccessfully urged by Judge Lora in his dissent. Assembly Bill 2293 of 1980. On March 26, 1981 our Supreme Court reversed our opinion for the reasons expressed in the dissent. In re Bergwall, 85 N.J. at 383 [427 A.2d 65]. Seven weeks later, Senate Judiciary Committee Amendments to the legislation replaced the phrase "R.S. 39:4-50" with "this section." Assembly Bill 2293 of 1980 with Senate Committee Amendments. This change was responsive to the Supreme Court's construction of N.J.S.A. 39:4-50 and incidentally explains the change in phraseology from "in this section" to "under this section."
We are persuaded that the Legislature was familiar with the judicial history and intended to use words which had been judicially construed so as to leave the operation of the enhanced penalty provision unchanged. See Brewer v. Porch, 53 N.J. 167, 174 [249 A.2d 388] (1969); In re Estate of Posey, 89 N.J. Super. 293, 301 [214 A.2d 713] (Cty.Ct. 1965), aff'd, 92 N.J. Super. 259 [223 A.2d 38] (App.Div. 1966). Ordinarily, a revision such as this is not construed to alter existing law unless there is a clear indication the Legislature desires it have such effect. See Helfrich v. Hamilton Tp., 182 N.J. Super. 365, 370 [440 A.2d 1366] (App.Div. 1981). We have a strong public policy against drunk driving  reflective of a broad public insistence on the separation of drinking and driving. The continued application of the *509 Bergwall construction to N.J.S.A. 39:4-50.4a recognizes that policy. [Id. at 362-63, 502 A.2d 1159.]
Defendant relies almost exclusively on State v. DiSomma, 262 N.J. Super. 375, 621 A.2d 55 (App.Div. 1993), to support his argument that the enhanced two-year penalty should not apply in this case. The DiSomma court stated by way of dicta that it did "not necessarily agree" with prior precedents in New Jersey which established that if a defendant had a prior conviction for operating a motor vehicle while under the influence of intoxicating liquor, a subsequent refusal conviction would lead to second offender status and the enhanced penalties of N.J.S.A. 39:4-50.4a. Id. at 378, 621 A.2d 55. The DiSomma court based its decision on the conclusion that the refusal statute (N.J.S.A. 39:4-50.4a) is a wholly separate section from the operating while under the influence statute (N.J.S.A. 39:4-50). Id. at 382, 621 A.2d 55.
In our view, defendant's reliance upon DiSomma is misplaced, since it is distinguishable from this case. In DiSomma we were faced with the converse situation from that which we are faced with here. Namely, in DiSomma we held that a defendant with a prior conviction for refusing to take a breathalyzer test in violation of N.J.S.A. 39:4-50.4a could not be sentenced as a second offender following a conviction for driving while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. DiSomma, therefore, does not serve as precedent here, because the factual circumstances were plainly different from this case and the court only addressed our factual scenario in dicta. Further, and perhaps more importantly, the DiSomma dicta is contrary to the principles established in such persuasive cases as Bergwall and Wilhalme, and undermines the sound legislative policy on which drunk driving statutes are grounded.
Beyond this, should defendant's argument succeed, anyone who has been previously convicted of drunk driving would refuse to take a breathalyzer test, since the penalty for such refusal would be the lesser six-month penalty, instead of the more severe two-year penalty. Such an outcome would do nothing to curb the "senseless havoc and destruction caused by intoxicated drivers." *510 See Wright, supra, 107 N.J. at 497, 527 A.2d 379. See also State v. Tischio, 107 N.J. 504, 512, 527 A.2d 388 (1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988).
Furthermore, defendant fails to offer a persuasive argument that the amendments made to the refusal statute were enacted for any reason other than to extend the suspension for repeat offenders from one year to two years. There is nothing in the legislative history which indicates that the amendments were made to overrule the precedent established by Bergwall. Should this have been the Legislature's intent, it would have done so explicitly. Given the strong public policy supporting the strict enforcement of drunk driving statutes, N.J.S.A. 39:4-50.4a should be interpreted to provide the harsher two-year suspension period for defendant's refusal to submit to a breathalyzer test in violation of N.J.S.A. 39:4-50.4a after his prior conviction for driving while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. Consequently, we affirm the trial court's imposition of defendant's two-year driver's license suspension.
However, we agree with defendant that the trial court erred in imposing a $50 VCCB penalty and a $75 SNSF assessment for his conviction for refusing to submit to a breathalyzer test in violation of N.J.S.A. 39:4-50.4a. The State concedes error in this regard. N.J.S.A. 2C:43-3.1a(2)(c), which deals with VCCB penalties, provides:
In addition to any other assessment imposed pursuant to the provisions of R.S. 39:4-50, any person convicted of operating a motor vehicle while under the influence of liquor or drugs shall be assessed $50.00.
And N.J.S.A. 2C:43-3.2a(1), which deals with SNSF assessments, provides:
In addition to any other fine, fee or assessment imposed, any person convicted of a crime, disorderly or petty disorderly persons offense or violation of R.S. 39:4-50 shall be assessed $75 for each conviction.
Neither N.J.S.A. 2C:43-3.1a(2)(c) nor N.J.S.A. 2C:43-3.2a(1) apply to impose monetary penalties and assessments for defendant's conviction for refusing to take a breathalyzer test in *511 violation of N.J.S.A. 39:4-50.4a. Consequently, the $50 VCCB penalty and the $75 SNSF assessment must be vacated.
Accordingly, except to vacate the $50 VCCB penalty and the $75 SNSF assessment imposed upon defendant, the judgment of conviction under review is affirmed.