Essex County Court of Common Pleas.

IN THE MATTER OF THE APPLICATION OF LOVE FAITH
   FOR A COURT ORDER PERMITTING THE APPLICANT
   TO VOTE IN THE GENERAL ELECTION.

Decided November 3, 1944.

For the Superintendent of Elections and Commissioner of Registration, *Lester E. Mahr.*

For the applicant, *Isserman, Isserman & Kapelsohn* (*Morris Isserman*).

HARTSHORNE, C. P. J. The applicant, "Love Faith," applies to the court "for the purpose of obtaining an order entitling him (her) to vote," *R. S.* 19:32–18; *N. J. S. A.* 19:32–18, in view of the fact that the superintendent has issued an order to the District Board to refuse to allow her to vote. *R. S.* 19:32–15; *N. J. S. A.* 19:32–15. This section provides that "the superintendent shall investigate all registry lists prior to the holding of any election." Having done so, he noted that the appellant had registered in the name of "Love Faith" and inquired from her as to her ordinary or previous name. This she refused to disclose. He thereupon issued his above order on the ground that she was "not entitled to vote" at such election, in that she was not properly registered. It is understood that the above situation is typical of a substantial number of similar instances.

The question thus is whether, when a person registers under a certain name which is, admittedly, not his previous name, and which gives no inkling as to his previous identity and, in addition, refuses to reveal his previous name, he is properly registered. This requires the consideration of the terms of the statute as to the registration of voters and their purpose.

The purpose of requiring voters to register previously is clearly to prevent fraud, (1) by ascertaining before the vote is cast whether or not such person possesses the qualifications to vote and (2) by preventing impersonation thereafter at the polls. These voting qualifications cover not only citizenship, age and residence, but, among other things, freedom from conviction of certain crimes. New Jersey Constitution, article 2; *N. J. S. A. Art. 2.* Hence the future voter must, in registering, not only state in writing his citizenship and

the fact that he is of proper age and residence, but also give his "full name," *R. S.* 19:31–3; *N. J. S. A.* 19:31–3, in order that his identity, past and present, may be ascertained.

If the name as above given is that which such individual has always borne, the superintendent of elections can thus readily check each of such registrant's voting qualifications including, for instance, his freedom from criminal conviction. But if the name given has been assumed by the registrant, and there is no statement added thereto that such person was "formerly known as ————," neither the registrant's freedom from criminal conviction during the years preceding his assumption of such new name, nor his citizenship, can be readily ascertained. A registration solely under an assumed name, particularly one which gives no inkling as to the previous birth name, thus flies in the face of the major purpose of the Election Act. And this is quite regardless of the refusal of the applicant in fact to disclose such prior birth name.

A consideration of the specific words of the Act, as distinguished from its general purpose, reaches the same result. By the very words of the act "the full name" must include the "Christian name," *R. S.* 19:31–3; *N. J. S. A.* 19:31–3, and the Christian name is "the baptismal name as distinct from the surname." Bouvier Law Dictionary. Moreover, this "full name" must be the "true name," *R. S.* 19:34–1; *N. J. S. A.* 19:34–1, in order to preserve the purity of the election itself regardless of the criminal responsibility of the individual.

It has, of course, been stated 'that "the Christian name is that which is given one after his birth, or at baptism, or is afterward assumed by him in addition to his family name." *Schaffer* v. *Levenson Co.,* 82 *N. J. L.* 61; 81 *Atl. Rep.* 434. But note that this assumed name is to be "in addition to his family name," and that the court states the general rule as follows:

"By the common law, since the time of the Norman conquest, a legal name has consisted of one Christian or given name, and of one surname, patronymic, or family name. The

surname, or family name, of a person is that which is derived from the common name of his parents, or is borne by him in common with other members of his family."

Clearly, the registrant in the case at bar has given no surname whatever.

True, under certain circumstances one may lawfully change his name without resort to any legal proceedings, and the name thus assumed will constitute his legal name just as much as if he had borne it from birth. 45 *C. J.* 381, *Names,* § 15. But these circumstances apply only where such change of name "is not done for a fraudulent purpose, and in the absence of statutory restriction." *Ibid.* Of course, the superintendent of elections in the case at bar does not expressly charge that there is a fraudulent purpose, for the very good reason that the refusal of the applicant may well have prevented him from ascertaining, whether or not such fraudulent purpose exists. But such a concealment obviously contravenes the statutory purpose to prevent disqualified persons from voting. Moreover, it is equally clear that the name by which one is commonly known is not for that reason alone one's "true name." 45 *C. J., Names,* § 14. Clearly, such common use of an assumed name will not suffice to make it the "true name," required to be stated by a statute, whose major purpose is to determine the past, as well as the present, identity of the individual.

Of course, the mere fact that the individual may desire to forget his past name, and to adopt a new name for allegedly religious reasons, is beside the point. In the first place, the right to vote is not a religious right, but a purely civil one, granted to all qualified persons regardless of religion.

There is no more reason why the individual, who now chooses to be known among her associates by the name of "Love Faith," should fail to disclose her past identity by registering under her previous ordinary name. than should the members of Roman Catholic sisterhoods, all of whom carry out their civil voting privileges under their ordinary civil names.

Finally, the state does not here seek to interfere with applicant's use of the name "Love Faith." All it seeks is to have

416

the applicant disclose her past name on the record for the above proper statutory purpose. Accordingly, since the applicant originally presented herself in due time to the registration authorities, she will now be permitted to re-register within two days from the filing of this opinion and order, but only by signing her previous true name, or adding same, as such previous name, to her present registration. Otherwise, the application is denied.