253 N.J. Super. 490 (1991)
602 A.2d 295
STATE OF NEW JERSEY
v.
ROBERT J. WHITE.
Superior Court of New Jersey, Law Division Ocean County.
Decided August 5, 1991.
*492 Robert J. Lecky, for appellant (Stamberger & Lecky, attorneys).
Bradley Henson, for respondent (James W. Holzapfel, Ocean County Prosecutor, attorney).
PISCAL, J.S.C.
This matter comes before the court on appeal pursuant to R. 3:23-8. The issue presented is whether a driver who provides one breath sample may properly be convicted for a violation of N.J.S.A. 39:4-50.2 if he refuses to give a second sample.[1] This case appears to be one of first impression in this State, and for the reasons that follow, the judgment of conviction is affirmed.

Facts.
On or about July 29, 1990, Officer David Pipeling of the Point Pleasant Beach Police Department was on patrol when he performed a motor vehicle stop on the operator, defendant herein, for driving without headlamps in violation of N.J.S.A. 39:3-56. After he approached the vehicle and asked defendant for his credentials, the officer detected the odor of alcohol *493 emanating from the vehicle. Believing defendant might be intoxicated, the officer asked defendant to step to the side of the road. After defendant was provided a recital of his Miranda rights, see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), another officer came upon the scene and administered several psychophysical tests. As a result of these tests and other circumstances, defendant was placed under arrest and transported to police headquarters where he was asked to perform another set of psychophysical tests.
Defendant was then provided a recital of the drunk driving influence report, commonly referred to as the refusal form or "paragraph 36." Defendant indicated, at that time, that he would submit to the breathalyzer test.
Patrolman Richard Otto, a certified breathalyzer operator, performed one complete test which yielded a result of 0.08% blood alcohol concentration. Patrolman Otto prepared the machine for a second test, but defendant refused to submit any additional samples. The officer then read the bottom portion of "paragraph 36," warned defendant of the potential penalties involved, and explained to defendant that the second test was required to verify the accuracy of the first test. Although defendant's testimony differs from that of the officer's with respect to the reading of this portion of the form, this court is bound by this finding of fact of the trial Judge. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964).
Municipal court judge James Liguori found defendant not guilty of operating under the influence, but guilty of N.J.S.A. 39:4-50.2 for refusing to submit to the second breathalyzer test. The court reasoned that N.J.S.A. 39:4-50.2 and -50.4a must be read together, and that N.J.S.A. 39:4-50.2 refers to the taking of samples.[2] The judge also relied on the wording of "paragraph *494 36" and the obligation of the police officer to read this to defendant under N.J.S.A. 39:4-50.2(e).

Opinion
The case at bar requires this court to determine whether the giving of a single breath sample is sufficient to defeat a finding of guilty of N.J.S.A. 39:4-50.2. In other words, is the giving of one breath sample by defendant sufficient compliance with the refusal statute. Defendant argues that N.J.S.A. 39:4-50.2 and -50.4a are void on the grounds of vagueness and violative of due process because the conduct prohibited or commanded is expressed in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application.
Legislation imposing penal sanctions must be strictly construed against the State. The public is entitled to plain and unambiguous statutory language defining proscribed conduct; a vague and indefinite penal statute infringes that right. By *495 avoiding a construction that renders a penal statute vague and indefinite, however, a reviewing court may save it from being struck down as unconstitutional. State v. Gately, 204 N.J. Super. 332, 336, 498 A.2d 1271 (App.Div. 1985); State v. Hodge, 95 N.J. 369, 374, 471 A.2d 389 (1984).
The primary purpose behind New Jersey's drunk-driving statutes is to curb the senseless havoc and destruction caused by intoxicated drivers. State v. Wright, 107 N.J. 488, 497, 527 A.2d 379 (1987); State v. Tischio, 107 N.J. 504, 512, 527 A.2d 388 (1987). Additionally, we have consistently given a broad interpretation to the drunk-driving laws when a narrow interpretation would frustrate this legislative policy. State v. Wright, 107 N.J. 488, 497, 527 A.2d 379 (1987).
The purpose of the refusal statute is to encourage all suspected drivers to take the breathalyzer test. Refusal to take the test is designed as a separate and distinct offense from conviction of drunk driving. Id. at 504, 527 A.2d 379. A breathalyzer refusal hearing has always been treated as a civil matter; the standard of proof in such a proceeding is a preponderance of evidence, not beyond a reasonable doubt. N.J.S.A. 39:4-50.4a.
With respect to refusal, it has been held that anything short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. The occasion is not one for debate, maneuver or negotiation but rather for a simple "yes" or "no" to the officer's request. State v. Pandoli, 109 N.J. Super. 1, 4, 262 A.2d 41 (App.Div. 1970).
It is evident that N.J.S.A. 39:4-50.4a and -50.2 must be read together. N.J.S.A. 39:4-50.4a states that the municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for [drunk driving] shall refuse to submit to the chemical test provided for in [C.39:4-50.2]. N.J.S.A. 39:4-50.2 provides that any person who operates a motor vehicle ... shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood. *496 Neither statute sets forth with precision the exact number of samples any operator must provide for any single occurrence. This omission, however, does not mandate a finding that the statute is unconstitutionally vague. Our courts have not hesitated to give a broad construction when a narrow or literal interpretation would frustrate the fundamental regulatory goals underlying New Jersey's drunk-driving laws. State v. Tischio, 107 N.J. 504, 513, 527 A.2d 388 (1987).
The implied consent law was promulgated to aid our courts and law enforcement agencies in the development of objective scientific evidence of intoxication and the refusal statute was enacted to further this purpose by inducing a motorist suspected of driving while under the influence of alcohol to submit to objective analysis of his intoxication level. The Legislature is presumed to be fully conversant with its legislation and courts are to avoid constructions that make statutory provisions redundant or meaningless. State v. Wright, 107 N.J. 488, 502, 527 A.2d 379 (1987).
N.J.S.A. 39:4-50.4a sets forth the penalties for refusing to submit to the test that is outlined in N.J.S.A. 39:4-50.2. This statute, in turn, provides that operators are deemed to have given their consent to the taking of samples of breath for the purpose of making chemical tests to determine the amount of alcohol in the blood. The clear wording of the statute indicates that operators are deemed to consent to give more than one breath sample to determine the amount of alcohol in the blood.
The Legislature has delegated the authority of promulgating breath-testing procedures and standards governing the qualifications and competence of those who administer the test to the Attorney General. N.J.S.A. 39:4-50.3.[3] This statute provides *497 that "chemical analyses of the arrested person's breath, to be considered valid under the provisions of this act, shall have been performed according to methods approved by the Attorney General." Emphasis supplied. The wording of this statute also indicates that the Legislature intended that more than one sample be provided.
In further support of the proposition that operators must provide more than one sample is "paragraph 36," the standard form prepared by the director that must be read by the police officer to the person under arrest. N.J.S.A. 39:4-50.2. This form, part of the record below, provides that if [the operator] refuses to provide samples of breath for the purpose of conducting chemical tests to determine the content of alcohol in his or her blood, he or she will be issued a separate summons charging a violation of 39:4-50.2. The form also provides that after the operator of the motor vehicle has provided samples of his or her breath for chemical testing, they have a right to have a person or physician of their own selection and expense, to take independent samples and conduct independent chemical tests of breath, urine or blood.
Additionally, the case law is replete with examples where more than one breath test was taken of the operator. See State v. Leavitt, 107 N.J. 534, 536, 527 A.2d 403 (1987); State v. DeLorenzo, 210 N.J. Super. 100, 103, 509 A.2d 238 (App.Div. 1986); State v. Miller, 220 N.J. Super. 106, 107, 531 A.2d 742 (App.Div. 1985); State v. O'Connor, 220 N.J. Super. 104, 105, *498 531 A.2d 741 (App.Div. 1984). A second breath sample is for the benefit of the accused because any disparate results will alert the operator to a potential mechanical malfunction of the machine. Inaccurate and false readings are discovered and may be disregarded. Those who test under 0.10% will not be prejudiced by the administration of a second test, as law enforcement officials will count only the lower of two breathalyzer results, obtained 15 minutes apart, as evidence against the suspect. State v. Downie, 117 N.J. 450, 460, 569 A.2d 242 (1990).
Our courts have discussed the importance of a two-test procedure to establish reliability in the operation of the model 900A breathalyzer machine. Romano v. Kimmelman, 96 N.J. 66, 87, 474 A.2d 1 (1984). The Romano Court held that the results of a model 900A test may be admitted in evidence and form the basis of a conviction under N.J.S.A. 39:4-50 if either: 1) the results consist of two tests within a tolerance of 0.01% of each other or, 2) in cases in which the two-test procedure is not available or not satisfied, the machine is shown to be not rfisensitive or if it is sensitive, that no transmitters were in the immediate area that would have an effect on the instrument. 96 N.J. at 87-89, 474 A.2d 1. The wording of Kimmelman implies a preference for the two-test procedure, and only when this is not available should one test be admissible to form the basis of a conviction.
In the case at bar, defendant submitted one breath sample yielding a result of 0.08%. Assuming he submitted a second sample which yielded a result of 0.10%, this second result may not have been admissible for a conviction of the per se offense under either Kimmelman or Downie, supra. This court need not address that issue. Under N.J.S.A. 39:4-50.2, defendant was obligated to submit a second breath sample for the purpose of performing a chemical analysis to determine *499 blood alcohol content.[4] Defendant failed to submit the sample, violated the provisions of N.J.S.A. 39:4-50.2, and therefore, the penalties of N.J.S.A. 39:4-50.4a become applicable.
The judgment of conviction of the municipal court is therefore affirmed.
*500 
*501 
NOTES
[1] N.J.S.A. 39:4-50.2(a) and (e) provide:

Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4-50.
....
No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant. The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test in accordance with section 2 of this amendatory and supplementary act. A standard statement, prepared by the director, shall be read by the police officer to the person arrested.
[2] N.J.S.A. 39:4-50.4a provides:

The Municipal Court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S. 39:4-50, shall refuse to submit to the chemical test provided for in section 2 of P.L. 1966, c. 142 (C. 39:4-50.2) when requested to do so, for 6 months unless the refusal was in connection with a subsequent offense under this section, in which case the revocation period shall be for 2 years.
The municipal court shall determine by a preponderance of the evidence whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while under the influence of intoxicating liquor or a narcotic, hallucinogenic or habit-producing drug or marihuana, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer, and if these elements of the violation are not established, no conviction shall issue. In addition to any other requirements provided by law, a person whose operator's license is revoked for refusing to submit to a chemical test shall satisfy the requirements of a program of alcohol education or rehabilitation pursuant to the provisions of R.S. 39:4-50. The revocation shall be independent of any revocation imposed by virtue of a conviction under the provisions of R.S. 39:4-50.
In addition to issuing a revocation, the municipal court shall fine a person convicted under this section, a fine of not less than $250.00 nor more than $500.00.
[3] N.J.S.A. 39:4-50.3 provides, inter alia, that

"[c]hemical analyses of the arrested person's breath, to be considered valid under the provisions of this act, shall have been performed according to methods approved by the Attorney General, and by a person certified for this purpose by the Attorney General. The Attorney General is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses and to make certifications of such individuals, which certifications shall be subject to termination or revocation at the discretion of the Attorney General. The Attorney General shall prescribe a uniform form of reports of such chemical analysis of breath to be used by law enforcement officers and others acting in accordance with the provisions of this act."
[4] Arguably, the use of the word "samples" in N.J.S.A. 39:4-50.2 could be read to require any number of samples. A suspect could submit nine breath samples but refuse the tenth and potentially face a conviction for violating the provisions of the statute. This holding should not be construed to condone such an anomalous result, nor should it be read to hold that the police have unbridled authority to request any number of samples, but rather that operators are required to submit sufficient samples to comply with Romano v. Kimmelman, supra.