718 A.2d 705 (1998)
315 N.J. Super. 353
Mary RAUBAR, Plaintiff,
v.
John W. RAUBAR, Defendant.
Superior Court of New Jersey, Law Division, Family Part, Cape May County.
Decided May 1, 1998.
*706 Edward R. Doughty, Linwood, for plaintiff.
Brian J. Callaghan, Atlantic City, for defendant.
BATTEN, J.S.C.
In this dissolution action, the court is asked to consider and decide the very issue earlier decided by another trial court in Holshue v. Holshue, 265 N.J.Super. 599, 628 A.2d 383 (Ch.Div.1993) and, contrary to that holding, allow plaintiff to assume, at final hearing and without prior notice given, a surname that is neither her birth name nor a *707 prior legal name. Having reviewed the current texts and legislative histories of N.J.S.A. 2A:34-21 (Resumption of Name or Assumption of Any Surname) and N.J.S.A. 2A:52-1 to -4 (Action for Change of Name; Complaint; Content; Service), this court grants the application and allows plaintiff to assume a new surname, Bevan, her grandmother's maiden name, pursuant to the former and without prior compliance with the notice requirements of the latter or R. 4:72-3; Cimiluca v. Cimiluca, 245 N.J.Super. 149, 584 A.2d 823 (App.Div.1990). The Holshue rationale and its inherent logic no longer persuasively countermand (1) the clear and unambiguous language of these name change statutes; (2) the legislative histories of each; (3) appropriate deference to the public policies unmistakably declared in recent amendments (indeed, the post-Holshue amendments to N.J.S.A. 2A:52-1 and R. 4:72-3); and (4) basic principles of statutory construction.
Plaintiff, Mary Raubar, and defendant, John W. Raubar, were divorced by way of Final Judgment of Divorce entered December 12, 1997 and filed December 30, 1997. Extensive pretrial motion practice notwithstanding, the parties resolved the cause of action and collateral issues at trial by way of agreement. At the conclusion of the hearing, plaintiff moved for leave to amend her complaint, nunc pro tunc, to include a request that she be permitted to assume a surname, Bevan, which is neither her birth name nor a surname previously used.[1] As explained by plaintiff, the surname, Bevan, was her grandmother's maiden name which she sought to assume for reasons sentimental.[2] The court reserved decision on this issue and afforded counsel the opportunity to submit briefs. Defendant consented to plaintiff's request.
Plaintiff argued, per letter brief, that: (1) the trial court decision in Holshue is not controlling;[3] (2) the Holshue court misconstrued the plain meaning of the 1988 amendments to N.J.S.A. 2A:34-21 and, in so doing, substituted its judgment alternative to the clearly stated intention of the Legislature; and (3) the Holshue rationale, that assumption of a new surname "may affect" someone other than a party to the divorce action, fails to recognizemuch less reconcilethe apparent reality that any name change, whether resumption of a former surname or assumption of a new and wholly different surname, "may affect someone else" in ways and to degrees too innumerable to contemplate. The potential for adverse effect upon third parties being not limited to new surname applications, the construction given N.J.S.A. 2A:34-21 by the Holshue court lacked empirical basis. As the application to assume a new surname under authority of N.J.S.A. 2A:34-21 should have been granted, so, too, should the instant application be granted without requiring prior compliance with N.J.S.A. 2A:52-1 and R. 4:72-1 to -4. For reasons which include yet also exceed arguments asserted by plaintiff, this court agrees and grants the name change application. Analysis starts, of course, with the statutes themselves, for "statutes are the law *708 ..."[4]. Chisom v. Roemer, 501 U.S. 380, 406, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991) (dissenting opinion by Justice Scalia).
Statutory construction, here, begins with two texts which our Legislature has adopted and our Governor has signed. The court must construe the words of these statutes as any ordinary member of the Legislature would have read them, Holmes, the Theory of Legal Interpretation, 12 Harvard Law Review, 417 (1899), and apply the meaning so determined. The court presumes that the Legislature is familiar with (1) existing judicial statutory interpretations, Chase Manhattan Bank v. Josephson, 135 N.J. 209, 638 A.2d 1301 (1994); (2) its own enactments, State v. Vonderfecht, 284 N.J.Super. 555, 665 A.2d 1145 (App.Div.1995); Monaghan v. Holy Trinity Church, 275 N.J.Super. 594, 646 A.2d 1130 (App.Div.1994); IFA Insurance Co. v. Waitt, 270 N.J.Super. 621, 637 A.2d 941 (App.Div.) certif. denied, 136 N.J. 295, 642 A.2d 1004 (1994); County of Essex v. Com'r, Dept. of Human Services, 252 N.J.Super. 1, 599 A.2d 167 (App.Div.1991), certif. denied, 127 N.J. 553, 606 A.2d 366 (1991); Matter of Freshwater Wetlands Protection Act Rules, 238 N.J.Super. 516, 570 A.2d 435 (App.Div.1989); Guzman v. City of Perth Amboy, 214 N.J.Super. 167, 518 A.2d 758 (App.Div.1986); (3) our common law, Bert v. Director, Div. of Taxation, Dept. of the Treasurery, State of N.J., 11 N.J.Tax 29 (Tax 1990); and (4) rules of grammar, Croswell v. Shenouda, 275 N.J.Super. 614, 646 A.2d 1140 (Ch.Div.1994). The court must assume that the Legislature intended these statutes to have meaning that is neither superfluous nor irrelevant, Phillips v. Curiale, 128 N.J. 608, 608 A.2d 895 (1992), neither redundant nor meaningless. State v. White, 253 N.J.Super. 490, 602 A.2d 295 (Law Div. 1991). The Legislature is presumed not to have included useless language in statutes. Alling Street Urban Renewal Co. v. City of Newark, 204 N.J.Super. 185, 497 A.2d 1287, (App.Div.1985), certif. denied, 103 N.J. 472, 511 A.2d 653 (1986).
The court's role, therefore, is to give effect to the Legislature's intent as reflected by the statutory language chosen, policy behind the statute, legislative history and concepts of reasonableness. State in Interest of J.L.A. 262 N.J.Super. 78, 619 A.2d 1321, rev'd. 136 N.J. 370, 643 A.2d 538 (1994). Legislative history of a statute and *709 contemporaneous construction of other laws pertaining to similar subject matter may also reveal the purpose and plan of the Legislature. Pine Belt Chevrolet, Inc. v. Jersey Central Power & Light Co., 249 N.J.Super. 461, 592 A.2d 634 (App.Div.1991), rev'd. 132 N.J . 564, 626 A.2d 434 (1993). Yet, legislative history must be carefully and judiciously invoked in this interpretive process. In re Madia, 68 B.R. 11 (Bkrtcy.D.N.J.1986). Where the Legislature has expressed its intention in plain language and the legislative history does not demonstrate a contrary purpose, the court is bound to follow the statutory provision as written. Matter of Resyn Corp., 945 F.2d 1279 (3rd Cir., 1991). There is no reason to consider legislative history when the statute itself is clear. In re Yuhas, 186 B.R. 381 (Bkrtcy.D.N.J.1995).[5]
A statute should not be interpreted to change a long-standing rule or principle embodied in a different statute unless the statute manifests a clear intent to do so. Deutch Shur, P.C v. Roth, 284 N.J.Super. 133, 663 A.2d 1373 (Law Div.1995). This court must therefore construe these statutes as separate enactments intended to be consistent with one another. Local 478 Trucking & Allied Industries Pension Fund v. Jayne, 778 F.Supp. 1289 (D.N.J.1991). When the purposes of two statutes appear to conflict with one another, the text of each fails to cross-reference the other, and legislative history is silent as to the possible conflict, the court generally assumes that the latter statute constitutes an amendment of the earlier statute, particularly when the latter specifically concerns a certain subject matter, whereas the previously enacted law pertains to the issue only in general terms.[6]American Telegraph & Telephone, Co. v. M./V. Cape Fear, 763 F.Supp. 97, (D.N.J. 1991) rev'd 967 F.2d 864 (3rd Cir., 1992)
The court should also consider the entire legislative scheme of which the statutes are a part. N.J. Transit Corp. v. Borough of Somerville, 139 N.J. 582, 661 A.2d 778 (1995). Statutes that share common purpose should be harmonized, not read in conflict. F. & W. Associates v. County of Somerset, 276 N.J.Super. 519, 648 A.2d 482 (App.Div.1994). The court cannot supply, however, every legislative omission or ignore statutory changes made deliberately by the Legislature. State v. Channel Home Centers, 199 N.J.Super. 483, 489 A.2d 1225 (App. Div.1985). Statutes in pari materia must all be viewed together in ascertaining legislative intent. State v. Wright, 107 N.J. 488, 527 A.2d 379 (1987); Kiss v. Jacob, 268 N.J.Super. 235, 633 A.2d 544 (App.Div.1993) rev'd. 138 N.J. 278, 650 A.2d 336 (1994). The rule of construction that statutes which deal with the same matter and seek to achieve the same overall legislative purpose should be read in pari materia, most obviously applies when statutes in question were enacted during the same session or went into effect at the same time, or when they make specific reference to one another. Sellitto v. Borough of Spring Lake Heights, 284 N.J.Super. 277, 664 A.2d 1284 (App.Div.1995).[7] Specific language contained in a statutory amendment to address concerns raised in prior judicial interpretations of the amended statute suggests that the Legislature considered those interpretations in drafting and enacting the amendment.[8]Chase Manhattan Bank v. Josephson, supra.
Application of these principles to the plain language of and legislative histories to the two statutes here involved yields the unavoidable conclusion that, in each instance, our Legislature has clearly written exactly what it intended the law to be.
Two statutes presently authorize a change of name. The first, N.J.S.A. 2A:52-1 (hereinafter *710 name change statute), authorizes "any person" to "institute an action in Superior Court, for authority to assume another name". [Emphasis added]. This language clearly contemplatesindeed, createsa cause of action for change of name by any person, to any name, for any legitimate and lawful reason; thus has the law been in New Jersey since 1877. Rev. 1877, p. 725, § 1; amended by L. 1894, c. 205 § 1, p. 312 [c.s.p. 3685, § 1]; amended by L. 1981, c. 362, § 1, eff. Dec. 30, 1981; amended by L. 1993, c. 228, § 1, eff. Aug. 6, 1993. Prior to August 6, 1993, our name change statute required disclosure of specific information to law enforcement agencies. Specifically, an applicant for name change was required to serve a copy of the complaint upon the Attorney General of the State of new Jersey, the county prosecutor of the county in which (1) the action was filed, (2) prior conviction(s) entered and/or (3) criminal charges were then pending. Indeed, the Holshue court predicated its analysis of the legislative history of this statute upon these notice requirements. Subsequent to Holshue, however, our Legislature amended the statute and relaxed substantially those very notice provisions, now requiring only a sworn affidavit by the applicant, setting forth "the applicant's name, date of birth, social security number ... convictions or pending charges ..." and an affirmative representation that "the action... is not being instituted for purposes of avoiding or obstructing criminal prosecution or ... avoiding creditors or perpetrating a criminal or civil fraud" N.J.S.A. 2A:52-1.[9] A copy of the complaint and affidavit now must be served only upon "any State or county prosecuting authority" relative to "any pending charges". [Emphasis added]. No further notice to persons or entities, public or private, is required.[10]
The 1993 amendments therefore redefine the "strong public policy that applications for name changes should be on notice to law enforcement officials and to the public", cited by the Holshue court as basis for denial of the application there. 265 N.J.Super. at 601, 628 A.2d 383. Public policy being thus amended, the "clear import" of the name change statute prior to the 1993 amendment ("... to ensure that by taking a new name a citizen is not committing a major fraud upon the public ..."; Id. at 601, 628 A.2d 383) is now advanced, post-1993 amendment, by the requirement that a name change complaint contain more specific information about the applicant and the reasons for which the name change is sought. Stated otherwise, the Legislature has obviously determined that the public policy formerly protected by mandatory service of process upon law enforcement agencies and the public is now sufficiently protected through mandatory pleading practice, a form of constructive notice; actual notice now need be given only to law enforcement entities prosecuting thenpending criminal charges against the applicant. This change in our legislative *711 scheme is not only significant; it resolves a fortiori the "irreconcilable conflict between two existing statutes dealing with the same topic". Id. at. 603, 628 A.2d 383.
The second name change statute, N.J.S.A. 2A:34-21 (hereinafter "resumption/assumption statute"), authorizes "... either spouse to resume any name used by the spouse before the marriage, or to assume any surname", but only "upon or after granting a divorce from the bonds of matrimony". N.J.S.A. 2A:34-21.[11] The 1988 amendment, as observed in Holshue, rendered the statute gender neutral and affords either spouse at or subsequent to final divorce the right to resume or assume a former or even new surname. 265 N.J.Super. at 601, 628 A.2d 383. Notably, the resumption/assumption statute was first adopted in 1907 and, prior to the 1988 revision, was amended just once, in 1938. L. 1907, c.216, § 30, p. 483 [C.S. p.2041, § 30]; amended by L. 1938, c. 188, p. 407, § 1; amended by L. 1988, c. 153, § 2.[12] Even more notably, the authority of the court to grant a name change pursuant to this statute has always been discretionary, not mandatory.[13]No Illegal Points, Citizens for Drivers' Rights, Inc. v. Florio, 264 N.J.Super. 318, 624 A.2d 981 (App.Div.1993), certific. denied 134 N.J. 479, 634 A.2d 526 (1993). The 1988 amendment authorized, for the first time, assumptionin addition to and distinct from resumption of name or surname both in its text and its title. [Emphasis added]. This distinction is significant. Specific authorization for either spouse "to assume any surname" corresponds to the more expansive title given the 1988 amendment by the Legislature. The pre-1988 title, "Resumption of name; surname of husband", contained no reference to assumption of a new surname as distinguished from resumption of a prior surname. Both title ("Resumption of name or assumption of any surname") and text to the 1988 amendment now include specific and disjunctive authorization for assumption of any surname. [Emphasis added]. A more clear and deliberate expression of the Legislature's specific intention to afford "either spouse" the right "to assume any surname" upon or after entry of final judgment of divorcesubject to the discretion of the courtis difficult to imagine. While the Holshue court was "trouble[d]" by "the provision of the resumption/assumption statute that affords either spouse the right to assume any other surname", Holshue at 602, 628 A.2d 383, the very title and text of the statute now provideas they then providedjust that. These two statutes must be read together. Egner v. Egner, 133 N.J.Super. 403, 337 A.2d 46 (App.Div.1975). The Legislature's recent relaxation of the notice requirement of the name change statute suggests its awareness of the Holshue decision and its apparent intention to clarify the right of a spouse, of any gender, to resume a former surname or assume any new surname at or subsequent to entry of final judgment of divorce pursuant to the resumption/assumption statute. Construction of the name change and resumption/assumption statutes in pari materia now yields conflict only in those cases wherein criminal charges are pending against the applicant, in which instance actual notice in form of service of copy of filed name change complaint and affidavit must be given to the law enforcement agency prosecuting those matters. Compliance with this notice requirement resolves fully any conflict between these two statutes in their current texts. Where, as here, no such *712 charges are pending, actual notice is not required by the name change statute. Approval of plaintiff's application therefore would preclude only prior constructive notice to the public by filed complaint. The requirement that judgments authorizing a name change include the applicant's date of birth, social security number and the name so resumed or assumed, as the case may be, otherwise assures constructive notice of the very same information to the public, albeit subsequent to entry of that judgment. Constructive notice to the public is therefore always achieved. N.J.S.A. 2A:52-2. Strict and inflexible adherence to the statutory requirement of constructive notice, under these circumstances, would yield marginal, if any, benefit to any party whom might be affected [14]. For example, the person here most likely to be affectedthe other spouseaffirmatively consents. Third parties or entities to whom contractual obligations already runsuch as financial institutions holding mortgages and/or negotiable instruments suffer no greater risk through plaintiff's assumption of a new surname than resumption of a former name. Indeed, the filing of the complaint for divorceto which the rights conferred by the resumption/assumption statute are corollaryhas already placed such interested parties on constructive notice that either party to the divorce action may seek to avail himself/herself of the various forms of relief to which he/she may be entitled consequent to final judgment, including assumption of a new surname or resumption of a former surname as authorized by N.J.S.A. 2A:34-21. Likewise, third parties contemplating new or different contractual relationships with either party have already been placed on constructive notice through the filed complaint and enjoy further opportunity to examine the parties' case information statements which must be filed pursuant to R. 5:5-2.[15]
Denial of plaintiff's application due to non-compliance with the constructive notice requirement of the name change statute would therefore advance form yet undermine substance. Provision of such notice would serve only to inform the public that the plaintiff has not been convicted of a criminal offense, is not seeking to obstruct justice, avoid creditors or perpetrate a fraud, and is not now a defendant in pending criminal matters. Mandatory compliance with the constructive notice requirement of N.J.S.A. 2A:52-1 would therefore inform the public, literally, of nothing. While certainly the fact of a pending name change application and the substantive positions asserted by plaintiff in the mandatory affidavit bear public awareness and review, the record here, including cross-complaints, responsive pleadings, vigorous motion practice, and exhaustive discovery, renders unlikely the prospect of adverse financial consequence to a third party due to the requested name change.
*713 Potential objections to a name change for reasons that relate to the name itself, as opposed to third party rights and duties, warrant caution within the context of our increasingly multi-cultural society. Intrinsic or unique value to a particular surname can be readily safeguarded by the court, however, through deliberate approach to specific applications and ascertainment of a clear and thorough record that includes, in all cases, sworn testimony establishing "the applicant's name, date of birth, social security number", specific and credible information regarding pending criminal charges and prior convictions of criminal and/or quasi-criminal offenses, and affirmative representation by the applicant that he/she seeks to change his/her name for reasons other than avoidance of creditors, obstruction of criminal prosecution, or perpetration of fraud, civil or criminal. N.J.S.A. 2A:52-1[16]. Indeed, prior compliance with pre-trial discovery rules applicable to divorce actions assures disclosure of at least the very sameif not moreinformation. For example, R. 4:5-1(b)(1) entitled "Requirements for First Pleadings; Case Information Statement", requires that a case information statement in form prescribed by Appendix XII be annexed as cover sheet to each party's first pleading in all civil matters.[17]R. 4:5-1(b)(2), entitled "Notice of Other Actions", requires that all first pleadings be physically attached to a certification specifying whether the matter in controversy is the subject of any other action pending in any court or is otherwise the subject of a pending arbitration proceeding, or whether any such proceeding is contemplated.[18] Notably, the obligation of parties to disclose the pendency or potential pendency of other related actions and the identification of potential parties in interest is a continuing one. In Family Part matters, R. 5:4-2(c), entitled "Affidavit of Verification of Non-Collusion", requires that every complaint and/or counterclaim for divorce be annexed to an oath or affirmation by the plaintiff or counterclaimant that the allegations of the complaint and/or counterclaim are true to the best of that party's knowledge, information and belief, and that the pleading is made in truth and good faith and without collusion.[19]R. *714 5:5-2, entitled "Case Information Statement", requires that a case information statement shall be filed in form set forth in Appendix V of Rules of Court in all contested family actions in which there is an issue as to custody, support, alimony or equitable distribution. Case information statements may be further required by order on motion of the court or party.[20] The obligation to disclose "any changes in information supplied on a case information statement" is also a continuing one; all amendments to the statement shall be filed with the court not later than twenty (20) days prior to the final hearing. R. 5:5-2(c). R. 5:5-2(e) further requires a party to serve upon a defaulting adverse party a notice of application for equitable distribution, alimony, child support and other relief, not less than twenty (20) days prior to the hearing date. The notice must include a statement of value of each asset, amount of each debt sought to be distributed, proposal for distribution, and a specific factual basis for the party's substantive position on the issues of alimony and/or child support. A copy of the notice of application for equitable distribution must be filed with the county clerk in the county of venue and notice thereof shall be served upon the responding party in all cases where the summons and complaint have been served by special substituted service pursuant to R. 4:4-4.[21]
To this extent, a party to a divorce action, having complied with the mandatory and specific disclosure requirements of Rule 5, has afforded the public noticeactual and constructiveto a degree not presently required by the name change statute.[22] For example, the filed complaint must articulate a cause of action. Likewise, a filed case information statement discloses names, addresses, dates of birth, and residential addresses of the parties and their children. The rule also requires disclosure of income, debt, valuation of and equity in assets held jointly or individually. All of this information provides the public and a reviewing court with information more credible, competent and comprehensive than a pro forma denial of any unlawful purpose incidental to a name change application.
Here, plaintiff testified, in response to questions by the court, that she (1) does not seek to avoid creditors or bankruptcy proceedings; *715 (2) does not seek to avoid any other proceedings or process, civil or criminal, pending or anticipated, (3) does not seek to perpetrate fraud; and (4) seeks to assume the surname, Bevan, only to share the family heritage of her maternal grandmother, a lawful and appropriate purpose. Denial of plaintiff's application due to non-compliance with the technical requirements of N.J.S.A. 2A:52-1 would therefore advance form, not substance. Such a result should be avoided in the interests of "... a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Cimiluca v. Cimiluca, 245 N.J.Super. 149, 584 A.2d 823 (App.Div. 1990).
The publication requirement of R. 4:72 poses the last procedural obstacle to approval of plaintiff's application.[23]
Our Appellate Division has earlier determined that the notice requirements of R. 4:72-3 do not apply to an uncontested application to resume a former surname pursuant to N.J.S.A. 2A:34-21, on written or oral motion, at or subsequent to final judgment of divorce.[24] Such a motion should be granted unless "some contrary reason appears, other than the informality of the procedures employed". Id. at 152, 584 A.2d 823. The Appellate Division reasoned:
Rules of procedure do not exist for their own sake, but as means to an end. They should be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any Rule may be relaxed or dispensed with if adherence to it would result in an injustice. R. 1:1-2. Amendments of pleadings with consent of the adversary or in the interest of justice "shall be freely given". R. 4:9-1; See R. 5:1-1. Eliminating pointless paperwork is a plus. Id. at 152, 584 A.2d 823.
See Viola v. Fundrella, 241 N.J.Super. 304, 574 A.2d 1036 (Ch.Div.1990).[25] This rationale for liberal amendment of divorce pleadings to permit a spouse or former spouse to seek use of a former surname here compels the same relaxation of R. 4:72-3 to allow amendment of divorce pleadings to permit a spouse or former spouse to resume a new surname. Cimiluca v. Cimiluca, 245 N.J.Super. 149, 584 A.2d 823 (App.Div. 1990).[26]
Just as mandatory compliance with the notice requirements of the name change statute would, in this case, place the public on constructive notice of fewer facts than are presently available to the public through this *716 record, so, too, would mandatory compliance with the publication requirements of R. 4:72-3. The "paperwork", in each instance, would seem "pointless". Id. at 152, 584 A.2d 823. Even if the "paperwork" were not pointless, plaintiff's application "to assume any surname" at or subsequent to entry of final judgment of divorce is specifically authorized, in plain and unambiguous language, in N.J.S.A. 2A:34-21. Amendments to N.J.S.A. 2A:52-1 and R. 4:72-3, subsequent to Holshue, relax the notice provisions in all name change applications and require less informational disclosure than the mandatory pleading and disclosure requirements to which parties to every divorce action are subject. R. 4:5-1(b)(1), (2); R. 5:4-2; R. 5:5-2. The resumption/assumption statute, applicable only to divorce actions, does not now conflict with the post-Holshue, 1993 amended text of the name change statute applicable to all other name change applications in the absence of pending criminal charges against the applicant. The Legislature of this State has amended the texts of each of these statutes with the rather obvious intent to assure persons of divorced status an expedited name change process.[27]
This court ought not now redraft these two statutes, as presently written, because their texts may not fit this or any other court's conception of what the Legislature must have had in mind. Again, statutes are the law:
When we adopt a method that psychoanalyzes [the Legislature] rather than reads its laws, when we employ a tinkerers tool box, we do great harm. Not only do we reach the wrong result with respect to the statute at hand, but we poison the well of future legislation, depriving legislators of the assurance that ordinary terms, used in ordinary context, will be given a predictable meaning. Our highest responsibility in the field of statutory construction is to read the laws in a consistent way, giving the Legislature a sure means by which it may work the people's will. 501 U.S. at 418 [111 S.Ct. 2354]. [dissent by Justice Scalia].
Likewise, this court must attribute predictable meaning to the ordinary terms of our name change and resumption/assumption statutes. Both reasonably mean what they clearly and consistently read.[28] Where, as here, (1) a party to a final judgment of divorce seeks to assume a new surname at or subsequent to entry of that judgment, (2) that party certifies to the informational requirements of the name change statute, N.J.S.A. 2A:52-1, (3) the comprehensive record then before the court contains no basis for any factual finding contrary thereto (indeed, contains more information than compliance with the notice requirements of N.J.S.A. 2A:52-1 and R. 4:72-3 would yield), and (4) the party articulates a credible and lawful purpose for assumption of that particular surname, the court may properly relax the publication requirement of R. 4:72-3 and grant the name change pursuant to N.J.S.A. 2A:34-21, the constructive notice requirement of N.J.S.A. 2A:52-1 notwithstanding. *717 Pendency of criminal charges against the applicant requires actual notice to the law enforcement authority responsible for prosecution thereof and reasonable opportunity to respond prior to adjudication of the name change application. Subject to this caveat, however, applications to assume a new surname, in the context of these circumstances, are properly granted contemporaneous to the court's ascertainment of lawful purpose on the part of the applicant.
Plaintiff's application to assume a new surname, Bevan, is therefore granted.
NOTES
[1] A "surname" is defined in Black's Law Dictionary as "the family name; the name over and above the Christian name. The part of a name which is not given in baptism; the name of a person which is derived from the common name of [his/her] parents". Rev'd. 4th Edition, West Publishing Co., St.Paul, Minn.(1968). See In re Faith's Application, 22 N.J.Misc. 412, 414-15, 39 A.2d 638 (Com.Pl.1944), ("... the Christian name is that which is given one after his birth, or at baptism, or is afterward assumed by him in addition to his family name.... By the common law, since the time of the Norman Conquest, a legal name has consisted of one Christian, or given name, and of one surname, patronymic, or family name. The surname, or family name, of a person is that which is derived from the common name of his parents, or is borne by him in common with other members of his family"), citing Schaffer v. Levenson Wrecking Co., 82 N.J.Law 61, 81 A. 434 (Sup.Ct.1911).
[2] These facts are virtually "on all fours" with the facts recited by the trial court in Holshue, supra.
[3] Plaintiff correctly observes that reported trial court opinions are not binding upon other trial courts. Thornton v. General Motors Corp., 280 N.J.Super. 295, 655 A.2d 107 (Law Div.1994); Mazza v. Insurance Co. of North America, 149 N.J.Super. 60, 372 A.2d 1374 (Law Div.1977); Smith v. Smith 150 N.J.Super. 194, 375 A.2d 290 (Ch.Div.1977); Lackovic v. New England Paper Tube Co. Inc., 127 N.J.Super. 394, 317 A.2d 426 (Law Div.1974); State v. Pittman, 124 N.J.Super. 334, 306 A.2d 500 (Law Div.1973); Goldberg v. Traver, 99 N.J.Super. 103, 238 A.2d 695 (Ch.Div. 1968) rev'd 52 N.J. 344, 245 A.2d 334 (1968).
[4] In Chisom, supra., Justice Scalia, in dissent, criticized the majority's construction of the 1982 amendment to Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, and its conclusion that the "results test" contained therein protects the right to vote in state judicial elections notwithstanding the failure of Congress to so state in the otherwise clear language of the statute. Adhering to the basic notion that statutes must be construed consistent with "the ordinary meaning of the language" chosen by the Legislature, Justice Scalia warned that Section 2 is "not some all-purpose weapon for well-intentioned judges to wield as they please in the battle against discrimination. It is a statute". Id. at 404, 111 S.Ct. 2354. Imbuing the majority decision "not with what the statute says, but with an expectation about what the statute must mean absent particular phenomena", Id. at 405, 111 S.Ct. 2354, Justice Scalia questioned the majority's "colorful" analogy of Congress's failure to specify its intent to exclude vote dilution claims involving judicial elections from the coverage of § 2 to "the dog that did not bark". Id. at 406, 111 S.Ct. 2354, citing n. 23 at 396, 111 S.Ct. 2354. Legislative history ought not be invoked to countervail the ordinary meaning of the clear language of a statute. Rejecting the majority's thesis that "... nothing of great significance can have transpired ... if the dog of legislative history has not barked", Id. at 405, 111 S.Ct. 2354, Justice Scalia reasoned:

... Apart from the questionable wisdom of assuming that dogs will bark when something important is happening, See, 411-413 (1892) (D. Spillan transl.), we have forcefully and explicitly rejected the Conan Doyle approach to statutory construction in the past. See Harrison v. P.P.G. Industries, Inc., 446 U.S. 578, 592, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) ("in ascertaining the meaning of the statute, a court cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark"). We are here to apply the statute, not legislative history. Statutes are the law though sleeping dogs lie. See, e.g. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495-96, n. 13, 105 S.Ct. 3275, 3284-85, n. 13, 87 L.Ed.2d 346 (1985); Williams v. United States, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). [Emphasis added]. 501 U.S. at 406, 111 S.Ct. 2354.
Likewise, this court is here to apply the plain and unambiguous language of N.J.S.A. 2A:34-21 and N.J.S.A. 2A:52-1, not their legislative histories. These statutes, too, "are the law though sleeping dogs lie". Id. This court concludes independently, however, that the legislative histories of these statutes further compel approval of plaintiff's application.
[5] Precisely the argument of Justice Scalia in Chisom, supra.
[6] Here, the statute which grants specific authority to a spouse or former spouse to assume a new surname at or subsequent to entry of final judgment of divorce, N.J.S.A. 2A:34-21, was adopted subsequent to the more general name change statute, N.J.S.A. 2A:52-1.
[7] As set forth hereinbelow, N.J.S.A. 2A:34-21 and N.J.S.A. 2A:52-1 were enacted and amended during different legislative sessions, took effect at different times, and fail to reference one another.
[8] Hence, this court can and does assume that the Legislature adopted the 1993 amendment to N.J.S.A. 2A:52-1 consequent to the Holshue decision earlier that year.
[9] The current text of N.J.S.A. 2A:52-1, containing these amendments, became effective August 6, 1993. It now states:

Any person may institute an action in Superior Court, for authority to assume another name. The complaint for a change of name shall be accompanied by a sworn affidavit stating the applicant's name, date of birth, social security number, whether or not the applicant has ever been convicted of a crime, and whether any criminal charges are pending against him and, if so such convictions or pending charges exist, shall provide such details in connection therewith sufficient to readily identify the matter referred to. Service of a copy of the complaint, whether or not citing a prior confiction or pending charges, shall be made upon the Attorney General, the county prosecutor of the county in which the action is filed, and, if applicable, upon the prosecutor of the county in which the applicant was previously convicted of a crime or in which charges against him are pending for such response as they may deem appropriate. The sworn affidavit shall also recite that the action for a change of name is not being instituted for purposes of avoiding or obstructing criminal prosecution or for avoiding creditors or perpetrating a criminal or civil fraud. If criminal charges are pending, the applicant shall serve a copy of the complaint and affidavit upon any State or county prosecuting authority responsible for the prosecution of any pending charges. A person commits a disorderly persons offense crime of the fourth degree if he knowingly gives or causes to be given false information under this section.
[10] Upon entry of final judgment, the clerk of the Superior Court must serve a copy thereof upon the State Bureau of Investigation, Division of State Police, but only in those cases wherein prior conviction(s) occurred or criminal charges are pending. N.J.S.A. 2A:52-2.
[11] Unlike N.J.S.A. 2A:52-1, amended post-Holshue in 1993, the resumption/assumption statute remains as amended pre-Holshue in 1988. The current text of N.J.S.A. 2A:34-21 states:

The court, upon or after granting a divorce from the bonds of matrimony to either spouse, may allow either spouse to resume any name used by the spouse before the marriage, or to assume any surname.
[12] In original form, the 1907 statute stated:

The court, upon or after granting a divorce from the bonds of matrimony, may allow her to resume her maiden name or the name of a former deceased husband.
The 1938 amendment read:
The court, upon or after granting a divorce from the bonds of matrimony to either spouse, may allow the wife to resume any name used by her before the marriage, and may also order the wife to refrain from using the surname of the husband as her name.
[13] The 1907, 1938 and 1993 texts of the statute provide that the court "may" grant the relief afforded by each. No Illegal Points v. Florio, supra at 329, 624 A.2d 981.
[14] In Holshue, supra., plaintiff-wife invoked N.J.S.A. 2A:34-21 as authority for her assumption of her mother's family name. Observing that N.J.S.A. 2A:52-1 evidences a "strong public policy that applications for name changes should be on notice to law enforcement officials and to the public", 265 N.J.Super. at 601, 628 A.2d 383, the trial court concluded that these two (2) statutes must be construed in pari materia:

The authority for a divorced litigant to assume any surname must be read in the context of N.J.S.A. 2A:52-1 and obligates that divorced litigant to include such an application in the complaint or counterclaim for divorce and to comply with all of the notice provisions of N.J.S.A. 2A:52-1. Anything less would result in an irreconcilable conflict between two existing statutes dealing with the same topic. Id., at 602-03, 628 A.2d 383.
[15] R. 5:5-2 states, in pertinent part, that:

(a) Applicability. The case information statement required by this rule shall be filed and served in all contested family actions, except summary actions, in which there is any issue as to custody, support, alimony or equitable distribution. In all other family actions, a case information statement may be required by order on motion of the court or a party.
(b) Time and Filing. Except as otherwise provided in R. 5:7-2, a case information statement or certification that no such statement is required under subparagraph (a) shall be filed by each party with the clerk in the county of venue within 20 days after the filing of an Answer or Appearance. The case information statement shall be filed in the form set forth in Appendix V of these rules. The court may, on its own motion and notice to the parties, dismiss a party's pleadings for failure to have filed a Case Information Statement. If dismissed, said pleadings shall be subject to reinstatement upon such conditions as the court may deem just. [Emphasis added].
[16] The statutory grant of authority to a spouse or former spouse to "assume any surname", N.J.S.A. 2A:34-21, affords seemingly unlimited options to that spouse. Given the "delicate nature" of any name change application and the "wide variety of ethnic heritages and linguistic sources" regularly encountered in the Family Part, Youth & Family Services v. J.L., 264 N.J.Super. 304, 310, 624 A.2d 628 (Ch.Div.1993), a trial court should not intervene in the name selection process; nor should the court, to any extent or degree, inhibit or "chill" an applicant's freedoms of expression, guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution, to be known as he or she desires. Names bearing unique or intrinsic appeal or value, such as, for example, Francis Albert Sinatra or Bob Dylan, may properly be scrutinized by the court with greater caution than less famous or infamousnames. Absent fraudulent or other improper intent, however, a person may adopt any name. Id. at 311, 624 A.2d 628. Parenthetically, the court takes judicial notice of the fact that the June 1998-May 1999 edition of the Bell Atlantic Telephone Directory for the Cape May-Wildwood area contains one (1) listing of the surname, Sinatra, yet none for the surname, Dylan. The Directory does contain, however, four (4) listings for Robert Zimmerman, Mr. Dylan's birth name. The statistical probability of any one name or combination of names being truly unique thus seems immeasurably slight.
[17] R. 4:5-1(b)(1) states:

(b) Requirements for First Pleadings.
(1) Case Information Statement. A Case Information Statement in the form prescribed by Appendix XII to these rules shall be annexed as a cover sheet to each party's first pleading.
[18] R. 4:5-1(b)(2) states:

(2) Notice of Other Actions. Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any other party who should be joined in the action. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification. The court may compel the joinder of parties in appropriate circumstances, either upon its own motion or that of a party.
[19] R. 5:4-2(c) states:

There shall be annexed to every complaint or counterclaim for divorce or nullity of marriage an oath or affirmation by the plaintiff or counter claimant that the allegations of the complaint or counterclaim are true to the best of the party's knowledge, information and belief, and that the pleading is made in truth and good faith and without collusion for the causes set forth therein.
[20] R. 5:5-2(a) states:

The case information statement required by this rule shall be filed and served in all contested family actions, except summary actions, in which there is any issue as to custody, support, alimony or equitable distribution. In all other family actions, a case information statement may be required by order on motion of the court or a party.
[21] R. 5:5-2(e) states:

In those cases where equitable distribution, alimony, child support and other relief are sought and a default has been entered, the plaintiff shall file and serve upon the defaulting party, in accordance with R. 1:5-2, a Notice of Application for Equitable Distribution, Alimony, Child Support and Other Relief, not less than 20 days prior to the hearing date. The notice shall include the proposed trial date, a statement of the value of each asset and the amount of each debt sought to be distributed, a proposal for distribution and a statement whether plaintiff is seeking alimony and/or child support and, if so, in what amount and a statement as to all other relief sought. Where a written property settlement agreement has been executed, plaintiff shall not be obligated to file such a notice. When the summons and complaint have been served on the defendant by substituted service pursuant to R. 4:4-4, a copy of the Notice of Application for Equitable Distribution, Alimony, Child Support and other Relief Sought shall be filed with the County Clerk of the county of venue and notice thereof shall be served upon the defendant in the same manner as the summons and complaint or in any other manner permitted by the court, at least twenty (20) days prior to the date set for hearing. The notice shall state that such notice has been filed with the County Clerk and can be examined by the defendant at the Clerk's office during normal business hours. The notice shall provide the address of the County Clerk's office where the notice has been filed.
[22] The inclusion of the resumption/assumption statute within the framework of N.J.S.A. 2A:34-1 to -52 entitled "Divorce and Nullity of MarriageAlimony and MaintenanceCare and Custody of Children", as opposed to the name change statute, N.J.S.A. 2A:52-1 to -4 suggests the Legislature's awareness of the disclosure requirements of Rule 5 as relate to those very cases to which that statute applies, i.e. dissolution cases.
[23] Consequent to amendment of the name change statute in 1993, R. 4:72 was amended in 1994. As amended, the rule now (1) corresponds to the pleading/notice provisions of N.J.S.A. 2A:52-1, R. 4:72-1; (2) allows a parent to bring an action for change of name on behalf of a minor, R. 4:72-2; (3) requires publication of a name change application in a newspaper of general circulation in the county of plaintiff's residence once, at least two (2) weeks prior to date of hearing, R. 4:72-3; and (4) permits the court, on the return date, to enter judgment based on the filed papers alone if no objection to the application is made, R. 4:72-4. Ordinarily, name changes are routinely granted so long as the court is satisfied that the request is not motivated by a fraudulent purpose. If the disavowal of such purpose is made part of the verified complaint, there will ordinarily be no need for testimony in the routine and uncontested application. R. 4:72, comment 1.
[24] R. 4:72-3 states:

The court by order shall fix a date for hearing not less than 30 days after the date of the order. Notice of application shall then be published in a newspaper of general circulation in the county of plaintiff's residence once, at least 2 weeks preceding the date of the hearing. The court may also require, in the case of a minor plaintiff, that notice be served by registered or certified mail, return receipt requested, upon a non-party parent at that parent's last known address.
[25] In Viola, supra., the trial court held that a spouse's name may be changed by judgment of divorce while a child's name may not be so changed; to achieve the latter, an action brought pursuant to court rule is required.
[26] There also exists authority for judicial approval of a name change beyond the authority conferred through either N.J.S.A. 2A:34-21 or N.J.S.A. 2A:52-1. N.J. D.Y.F.S. v. J.L., 264 N.J.Super. 304, 624 A.2d 628 (Ch.Div.1993). In J.L., the trial court found and asserted authority for changing the name of a child who was the subject of a D.Y.F.S. proceeding, consistent with the child's best interests, and beyond the notice requirements of either N.J.S.A. 2A:52-1 and Rule 4:72.
[27] Given the jurisdiction of the Family Part, Chancery Division, to adjudicate legal rights, such as the right to petition for a name change pursuant to N.J.S.A. 2A:52-1, corollary to adjudication of a cause of action that has historically remained equitable, i.e. divorce, the Legislature's adoption of N.J.S.A. 2A:34-21 is a meaningless redundancy unless the Legislature sought to create a more expedited name change process for only those persons who, as spouses or former spouses, have satisfied the procedural and substantive requirements to final judgment of divorce. N.J.S.A. 2A:34-1 to -52; State v. White, supra.; Phillips v. Curiale, supra.; also see Apollo v. Kim Anh Pham, 192 N.J.Super. 427, 470 A.2d 934 (Ch.Div.1983), citing Fleischer v. James Drug Stores, 1 N.J. 138, 150, 62 A.2d 383 (1948), citing Mantell v. International Plastic Harmonica Corp., 141 N.J.Eq. 379, 55 A.2d 250 (E & A 1947) ("... where equity has rightfully assumed jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of the entire controversy and, except where the jurisdiction of equity depends on the prior establishment of a right at law, settle purely legal rights and grant legal remedies.") Apollo at 430-431, 470 A.2d 934. The adoption and amendments of the statutes, by different Legislatures, at different times, utilizing markedly different language, requiring markedly different procedures, all suggest more strongly now than ever before the 1993 amendment to N.J.S.A. 2A:52-1, that the Legislature has intended exactly that which it has clearly spoken in each of the texts to these two statutes.
[28] Paraphrasing Justice Scalia in Chisom, supra, statutes are the law though new surnames abide.